HAZELTON A. JOYCE, Receiver, v. HARRY
ABRAMS et al.

[Nos. 37, 38, October Term, 1940.]

*Decided November 14th, 1940.*

The causes were argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON and DELAPLAINE, JJ.

*Edgar Allan Poe* and *Seymour O'Brien,* with whom was *Ralph Robinson* on the brief, for the appellant.

*Harry O. Levin,* with whom were *C. Morton Goldstein* and *Sigmund Levin* on the brief, for the appellees.

JOHNSON, J., delivered the opinion of the Court.

This record contains two appeals from orders of the Circuit Court of Baltimore City. The first appeal is from an order rescinding a previous order by which an assessment was made against certain policyholders or members of The Eastern Mutual Casualty Company, while the second appeal is from the action of the chancellor in denying a petition of the receiver praying, (1) that an assessment be made against the members or policyholders, and (2) praying ratification and confirma-

tion of an assessment made against them by the directors of the company, subsequent to the receiver's appointment.

Code 1939, art. 48A, sec. 52, provides as follows: "(Liquidation of Insolvent or Illegally Conducted Companies.) Whenever the Insurance Commissioner shall have reason to believe that any insurance company doing business in this State is insolvent, or fraudulently conducted, or that its assets are not sufficient for carrying on the business of the same, or during any non-compliance with the provisions of this Article, it shall be his duty to forthwith cause proper proceedings to be instituted in the name of the State of Maryland against any such company in a court of competent jurisdiction, for the purpose of obtaining an injunction suspending the business of said company and having the said court assume jurisdiction over the property and business of said company for final liquidation, and the court in which said proceeding is instituted shall be authorized to appoint the Insurance Commissioner or the Deputy Insurance Commissioner, Receiver of such company, provided, however, that no such Receiver shall receive any additional compensation for his services as Receiver, but shall be allowed clerical, traveling and legal expenses, subject to the court's order, and shall furnish such bond as the court may require."

Pursuant to the authority of the section above quoted appellant was appointed receiver with full power and authority to take possession of the property and effects of The Eastern Mutual Casualty Company, and to collect the outstanding debts due the company. The appointment was made after the Insurance Commissioner of the State of Maryland, under the section previously quoted, had filed a bill of complaint alleging, *inter alia,* that The Eastern Mutual Casualty Company was insolvent, and praying (a) an injunction requiring the company to suspend business; (b) that the court assume jurisdiction over its property and business for final liquidation; and (c) for the appointment of appellant

as receiver therefor, and after the company had admitted its insolvency and consented to the appointment to liquidate and wind up its affairs.

Subsequent to the qualification of the receiver, a petition was filed by him showing that liabilities of the company far exceeded its assets; further, that by virtue of each policy contract it had issued, the holder of the same bound himself to pay assessments made by the company in accordance with the law of the State of Maryland and by-laws of the company, which assessment, however, should in no event exceed "an amount equal to once the amount of and in addition to the annual cash premium written in the policy." A by-law of the company provided that each policyholder should pay upon demand "in addition to the cash premium written in his policy" such sums as might be assessed by the board of directors of the corporation pursuant to the law of Maryland, which assessments, however, should not in the aggregate exceed "the amount of the cash premium written in the policy or policies so held." It was further shown that the directors of The Eastern Mutual Casualty Company, subsequent to the receiver's appointment and qualification, had at a special meeting recognized the company's insolvency, as defined by the provisions of Code, art. 48A, sec. 155, and the by-laws of the company relating to assessments of members, and made an assessment upon all members who were such on or after January 1st, 1939, for an amount equal to the annual cash premium mentioned in the policies of each member. The prayers of that petition were, (a) that the court make assessments identical with those made by the board of directors at its special meeting, (b) that the chancellor ratify and confirm the assessments made by the directors, and (c) for the direction to the receiver to collect such assessments. Upon that petition the assessments were made by the chancellor, who by the same order ratified the assessments made by the board of directors, and directed the receiver promptly to demand payment and to collect such assessments, and if necessary to en-

force collection by instituting proceedings for that purpose. It was later suggested by the receiver that, for the present, collections of assessments be limited to fifty per cent., and the chancellor ordered accordingly.

After the assessments had been made and the order directing the receiver to take action to collect fifty per cent. thereof had been passed, appellees, who were members or policyholders, petitioned the equity court for rescission of the order, because no authority was vested in the court to make the assessments, nor to approve or confirm those made by the board of directors. After the receiver had answered the petition, the cause was set down for hearing, at which time testimony was taken, from which it definitely appeared that the debts and liabilities of the company, including reserves fixed by the State Insurance Department, exceeded its assets by more than $90,000. No contention therefore is made as to the company's solvency, and in final analysis the controversy may be said to relate to the powers of the equity court to make the assessments. If the chancellor had power to make the same, the order by which he rescinded his action was improper, and if, on appointment of the receiver, the duties of the directors ceased, at least the action of the chancellor in ratification of the assessments by the directors attempted to be made would be regarded as his own act in making the assessments. Of course, if subsequent to the receiver's appointment the directors of the company could validy make an assessment against the members or policyholders, no reason would appear as to why their action was not binding. It is argued that power was vested in them to make the assessments, because section 52 contemplates final liquidation and not dissolution of the corporation, which was left in existence. It is also suggested that no Maryland decision prohibits the directors from doing acts in the aid of the receivership, and *Fletcher, Cyclopedia Corporations*, sections 7775, and 19 *C. J. S. Corporations*, sec. 1493, page 1207, are cited in support of the argument. A consideration of those authorities has not con-

vinced us of their applicability to the situation under consideration. Indeed, the one first referred to distinguishes clearly between receivers appointed to preserve the property and not run the business, and those appointed to wind up the business, in which case the author states it to be generally held that the corporate powers "are for the most part vested exclusively in the receiver under the direction of the court." It is further obsered that if the rule were otherwise, "conflict between the directors and the receiver would result in endless confusion."

After the receiver under the court's jurisdiction has, as in the present case, taken charge of the property and assets of the insolvent corporation for the purpose of liquidation, it would seem illogical to hold that the duties of the directors were not suspended during the period the receiver functioned, since otherwise serious conflicts between the receiver and the board of directors might readily arise. We are, therefore, of the opinion that the attempt of the directors to asses the members after the receiver was appointed was nugatory and ineffectual.

But the question remains as to the chancellor's power under section 52 to make the assessments. Appellees argue (1) that the appellant is a statutory receiver and therefore merely an administrative officer whose duties are limited by the statute itself, from a consideration of which no power of assesment may be inferred; they also contend, (2) that to hold that the power of assessment existed in the chancellor would be to add to the plain words of the statute.

In our judgment, the argument is untenable when section 52 is impartially considered. We regard the section as merely a method designated, whereby the duty is imposed upon the Insurance Commissioner of the State to take certain steps in the interest of creditors of an insolvent insurance company. In addition it is designed to identify the personel of the receiver, who must serve without compensation. The use of the terms "proper proceedings," "court of competent jurisdiction," and

"having the said court assume jurisdiction," indicate that no new equitable power or remedy was being created, but on the other hand are a recognition on the part of the Legislature that the equity court had under its general equity powers full authority to do all things necessary to the final and orderly liquidation of the subject company. If the intention had been to create a wholly new statutory remedy, certainly the court should have been designated and not referred to simply as a "court of competent jurisdiction," the last-mentioned words as used plainly recognizing a subsisting jurisdiction in the courts designated. To hold otherwise would force us to the conclusion that, by the enactment of section 52, the Legislature intended to create a situation whereby courts of equity could not function within the limits of their generally recognized equity jurisdiction without substituting any delineation of powers under which the court could act. We hesitate, in view of the verbiage of the section, to impute to the Legislature such an intent, since it is certainly necessary in the case considered that a contingent asset such as these assessments will be collectible. Otherwise the provisions in the policy contracts would be nugatory. It is to be presumed that the Legislature was entirely cognizant of the fact that courts of equity were peculiarly equipped, after assuming jurisdiction in cases of this character, to supervise and direct the receiver to the end that assets could be collected and in general could supervise the distribution of such assets to creditors and superintend the winding up of the business in orderly fashion. It is not to be presumed that, in making provision for the appointment of the receiver and for an assumption of jurisdiction on the part of the equity court for the purpose of liquidation, that the Legislature intended that liquidation could not be had, nor that it intended to absolve the members of the insolvent corporation from the serval liabilities they had assumed, both in their policies and under the by-laws as well as under the provisions of the statute.

Accordingly, it must be held that, although we are not of the opinion that the directors could validly make the assessments against the members, because the affairs of the company were being administered by the receiver under the court's jurisdiction, yet the chancellor, who had assumed jurisdiction over the corporation for the purpose of orderly liquidation, possessed the power to make the assessments in this case, inasmuch as the need for them was shown to exist.

The further contention is advanced by appellees that in any event the assessments which the court rescinded are improper, because they are made against all members or policyholders as of January 1st, 1939, and subsequent thereto. The complaint is that the language is too general, because under section 155, Code 1939, article 48A, each member is liable "only on account of losses and expenses incurred while his policy was in force," and it is not shown that the liabilities of the company, which far exceed its assets, arose during the period that the appellees were members.

In the present case the evidence shows there were approximately 3000 members or policyholders. It is difficult to suggest a method of assessment which at the time it is made must specifically name each member and determine that the liabilities arose during his period of membership. It would, therefore, seem that the assessment must be regarded as a decree fixing the rate of liability, but not determining responsibility of the members. *Lincoln Bus Co. v. Jersey Mutual Cas. Ins. Co.*, N. J. Ch., 112 N. J. Eq. 538, 165 A. 112. The assessment as originally made is in the only form it could effectually have been made, and this does not deny any member his rights under the statute, for when steps are taken to collect from him the receiver is required to show that the liabilities of the insolvent corporation arose during his membership. Each member will, therefore, have his day in court, and an opportunity of requiring proof of liability on his part, and as to those against whom no liability is proven no judgments can be obtained.

These views lead us to differ with those of the chancellor, except in respect to his action in refusing to ratify and confirm the assessments made by the directors of the company subsequent to the appointment of the receiver. It follows that his action in rescinding his previous order by which an assessment had been made against the policyholders or members of the company was improper, as was likewise that part of the subsequent order denying the receiver's petition to make an assessment against the members.

> *Order in No. 37 affirmed in part and reversed in part, with costs. Order in No. 38 affirmed in part and reversed in part, with costs. And causes remanded for the passage of further orders not inconsistent with the views herein expressed.*