J-S59014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| K.M. YASMINE EL MOURSI, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JIBREEL AL-AMIN, | |
| Appellee | No. 364 EDA 2016 |

Appeal from the Order Entered January 8, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
No. 15-08466
PACSES No. 789115353

BEFORE:  BENDER, P.J.E., OLSON, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED OCTOBER 26, 2016**

K.M. Yasmine El Moursi (Mother) appeals from the January 8, 2016 order, entered after a hearing, that denied her complaint for child support, which requested retroactive support from Jibreel Al-Amin (Father)[1] for their two adult children for a period during the children's minority.  After review, we affirm.

The trial court provided the following factual and procedural history of this matter:

> Mother, a German citizen, filed a complaint for child support for two adult, emancipated "children" Hawwa Al-Amin

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Father has not filed a responsive brief in this case.

age twenty-three (23) and Ibrahim Al-Amin age twenty-four (24). Appellee Jibreel Al-Amin, (hereafter "Father") and Mother were married in May of 1990. The couple had two children. Ibrahim Al-Amin born [in] April [] 1991 in Tacoma, Washington, and Hawwa Al-Amin born [in] March [] 1992 in Eberbach, Germany.

Mother testified credibly that the parties lived together in Tacoma, Washington, and moved to Germany in June of 1991. On May 9, 1992, while in Germany, Father was arrested and removed from the home. Father was tried and convicted in December of 1992. Father was sentenced to three (3) years and nine (9) months in prison, served two (2) years, and was deported from Germany to the United States. Mother returned to the State of Washington and filed for a divorce in June of 1992. She then returned to Germany. Mother came back to Washington in December of 1992, stayed for an unidentified amount of time and returned to Germany. Mother waited for, but did not receive a divorce from the State of Washington. Thereafter, Mother filed for a divorce in Germany, which was granted in the summer of 1995. Mother returned to the United States in February 1998 and resided there with the children until September 2000. Mother and children moved to Munich, Germany after September 2000.

Mother testified vaguely about her efforts to obtain child support. She first sought to obtain child support from Father through the German authorities in August of 1995. Mother stated, "I gave them the copy of the passport, of his Social security number, the address of his sister from Philadelphia, and everything." Mother further testified that she did not know how long the German authorities tried to locate Father before notifying Mother that they could not find Father. Mother testified on cross examination that she moved approximately seven times, and that each time she moved to a new city in Germany she notified the authorities of Father's information. Mother stated she received "social money" in Germany. Mother described social money as welfare, but was unable to elaborate on the monetary amount received or the time periods for which she received the funds. In March of 2009, Mother contacted social services in the State of Washington in the United States. Mother testified that they were "unable to help her." It was Father who contacted Mother through Facebook in 2011. Mother testified that she did not pursue child support at that time.

- 2 -

Father testified credibly that he returned to the United States in March of 1994. He lived in New York, where he resided in a shelter with the Salvation Army, and attended school. Shortly thereafter, in 1995, Father returned to Philadelphia. He has maintained residency in Philadelphia since 1995. Father contacted one of Mother's friends shortly after his return to the United States, and he spoke with Mother by phone briefly. Thereafter, he never spoke to Mother again. Father's personal papers, left behind in Germany when he was deported to the United States, were returned via mail service to his sister's address in Philadelphia. The box had Mother's name on the return address. Father became a real estate agent in 2001, and practiced the profession until 2013. Father located the two subject children of the support complaint on Facebook in 2010.

Father paid child support in the State of Washington until 2013, for a child (hereafter "eldest son") from another relationship who was born prior to his marriage to Mother. Father's support was garnished from his wages. Father had contact with his eldest son, and said child came to live with Father off and on from the age of fourteen (14) to eighteen (18). Mother was aware of the existence of Father's eldest son, his date of birth, and where the eldest son resided. Although Mother testified she contacted Washington State authorities concerning child support, it is incredible that Washington State would be unaware of the location of a Payor (Father) who remained in their system until at least 2013.

Trial Court Opinion (TCO), 3/24/16, at 1-4 (citations to the record omitted).

Mother filed the child support petition underlying this case on June 19, 2015. A hearing was held on January 8, 2016, resulting in the denial of Mother's support petition. Mother then filed the instant appeal and raises the following question for our review:

Whether [Father] can be excused from paying support for minor children because [M]other filed her complaint for support after the children had reached majority and the trial court declined to extend the retroactive period as allowed by [Pa.R.C.P.] 1910.17(a), when [F]ather's whereabouts were unknown due to

- 3 -

his conviction and incarceration in Germany for sexually abusing the half-sister of children, his subsequent deportation from Germany without [M]other's knowledge, and even though [M]other, a German resident, continued to search for [F]ather in order to pursue support despite the geographic, financial and language barriers she faced.

Mother's brief at 4.

When reviewing an issue relating to child support such as the one now before this Court, we are guided by the following:

> [T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Samii v. Samii*, 847 A.2d 691, 694 (Pa. Super. 2004) (citations omitted). Furthermore, this Court:

> must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

*Hogrelius v. Martin*, 950 A.2d 345, 348 (Pa. Super. 2008). "When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented." *Stokes v. Gary Barbera Enterprises, Inc.*, 783

A.2d 296, 297 (Pa. Super. 2001), *appeal denied*, 568 Pa. 723, 797 A.2d 915 (Pa. 2002). "[T]his Court is not free to usurp the trial court's duty as the finder of fact." ***Isralsky v. Isralsky***, 824 A.2d 1178, 1190 (Pa. Super. 2003) (quoting ***Nemoto v. Nemoto***, 423 Pa. Super. 269, 620 A.2d 1216, 1219 (Pa. Super. 1993)).

***Mackay v. Mackay***, 984 A.2d 529, 533 (Pa. Super. 2009).

Mother begins her argument by asserting that the trial court misapplied Pa.R.C.P. 1910.17(a), which provides:

(a) An order of support shall be effective from the date of the filing of the complaint or petition for modification unless the order specifies otherwise. In a child support case, if a change in custody occurs after the date of filing, but before a domestic relations conference is held, the trier of fact shall enter a charging order going forward in favor of the primary custodian that shall be effective from the date of the change in custody. The trier of fact also may enter a retroactive arrears order in favor of the party who was the primary custodian at the time of filing. Such an order may address the period from the date of filing to the date of the change in custody. However, *a modification of an existing support order may be retroactive to a date preceding the date of filing* if the petitioner was precluded from filing a petition for modification by reason of a significant physical or mental disability, misrepresentation of another party or other compelling reason and if the petitioner, when no longer precluded, promptly filed a petition.

***Id.*** (emphasis added).

Although Mother recognizes that this rule directs that the effective date of a support order is retroactive to the date that a complaint is filed, she contends that this rule does not prohibit a pre-complaint effective date. Rather, Mother asserts that because there were "real and serious reasons for the delay in filing[,]" the court should not have "mechanically" applied this rule without "exercising its judgment, where … it [was] not prohibited from

- 5 -

doing so." Mother's brief at 10. In other words, Mother contends that the court erred in its application of Rule 1910.17 and should not have ignored the equities and the best interests of the children.

In support of her position, Mother distinguishes her situation from that in **Pfeifer v. Cutshall**, 851 A.2d 983 (Pa. Super. 2004), a case relied on by the trial court. Mother's view is that in **Pfeifer** the father was not notified or given the opportunity to be heard before the original support order that he had agreed to was modified to be retroactive to the date of the child's birth. Here, Mother claims that the delay in her filing of a complaint occurred because Father could not be found and given notice and an opportunity to be heard. Therefore, applying equitable principles, Mother asserts that the entry of an order for support should be allowed retroactive to a date prior to the filing of her complaint.

Mother also relies on **A.S. v. I.S.**, 130 A.3d 763 (Pa. 2015), to support her request that the court should weigh the equities between the parties. The **A.S.** decision involved "a stepfather who haled [*sic*] a fit parent into court, repeatedly litigating to achieve the same legal and physical custodial rights as would naturally accrue to any biological parent." **Id.** at 770. As a result, our Supreme Court held that due to the stepfather's actions, he was held liable for child support. The Court concluded that because the stepfather had "taken sufficient affirmative steps legally to obtain parental rights[,]" he "should share in parental obligations, such as paying child support." **Id.** at 770-71. "Equity prohibits [the] [s]tepfather from

- 6 -

disavowing his parental status to avoid a support obligation to the children

he so vigorously sought to parent." *Id.* at 771.

Here, the trial court extensively discussed its reasons for its denial of

Mother's complaint, stating:

> Pennsylvania Rules of Civil Procedure state that both a complaint and a petition for modification are effective as of the date of filing unless the order states otherwise. Pa. R. Civ. P. 1910.17(a). The rule goes on to state that a modification of an existing support order may be retroactive to a date preceding the date of filing if a compelling reason exists. *Id.* The legislature specifically included both a complaint and a petition for modification when stating the effective date of a support order as the date the complaint or petition was filed. Only a modification of an existing support order was permitted to be effective retroactive to a date preceding the date of filing. The legislative intent is clear in not allowing original complaints to be effective retroactive to a date preceding the filing of a complaint.
>
> A support order may not be made retroactive to a date preceding the filing of the complaint. *Pfeifer v. Cutshall*, 851 A.2d 983, 985 (Pa. Super. 2004). In *Pfeifer*, a support order from Germany, arrears were calculated from a period of time when no child support order existed. *Id.* at 986. There the Court held that it would be against public policy to enforce: a foreign order that would not have been allowed under Pennsylvania law. *Id.* at 986. The German order was recalculated in accordance with Pennsylvania law, and the effective date of the support order in Pennsylvania was determined to be the date the support order was filed. *Pfeifer* refused to recognize the arbitrary date assigned by the foreign court. *Id.* at 987. *See also, Bowser v. Blom*, 766 A.2d 1259, 1261 (Pa. Super. 2001). (Where first support complaint is dismissed, support order is retroactive to date second complaint was filed). *Christianson v. Ely*, 575 Pa. 647, 664[, 838 A.2d 630] (2003). (Where first support complaint is neither discontinued nor terminated the support order is retroactive to date first complaint was filed).

Here, the complaint for support was filed on June 19, 2015. At the time the complaint was filed, the emancipated "children" were twenty-three (23) and twenty-four (24) years of age. The support order, if issued, could only have been effective from the date the complaint was filed. The trial court lacks the authority to order retroactive child support for emancipated children. Even if the trial court wished to recognize an earlier date, there would have been no compelling or permissible reason to do so.

. . .

The trial court found no significant physical or mental disability that would have prevented Mother from filing a complaint for support. Mother testified credibly that when the children were minors she was able to work and did work sporadically; she was able to obtain a divorce and change her child's name through the German courts; she was able to travel back and forth between Germany and the United States, and she was able to obtain government financial resources to her benefit.

The trial court did not find that Father made a misrepresentation to Mother or otherwise hid his whereabouts. Father testified credibly that he contacted Mother, through a friend, and spoke to Mother briefly when he returned to the United States in 1994. Father worked as a real estate agent from 2001 until 2013, and his contact information was listed on the Internet. Father received a package from Mother sent via mail to his sister's Philadelphia address. Father paid child support for another child in the State of Washington, the support was garnished from Father's pay, and his contact information was known to the State of Washington. Mother testified credibly that she was aware of the sister's contact information and had personally spoken with one of Father's sisters, she was aware that Father had family in Philadelphia, and she was aware of Father's other son and his date of birth. Mother had a copy of Father's passport and Social Security number.

Despite the Commonwealth's assertions,[2] this case has no compelling reason that would set it apart from other support complaints. The court has procedures in place to work with foreign orders. Individuals have access to language interpreters. Father's crime, although never specified on the record, was allegedly heinous, but there was no testimony whatsoever that Father's conviction created a significant mental or physical disability in Mother. In Philadelphia, Pennsylvania, the Office of Child Support Enforcement represented Mother and Father appeared *pro se*. There was no testimony concerning Mother's prior representation, if any, or Mother's efforts to obtain counsel to pursue child support. Mother did not show that she suffered any prejudice from her previous lack of representation. Mother also failed to show that she suffered any language impediment. She proceeded in English and never requested an interpreter despite the [c]ourt's ability to furnish her with one.

Mother failed to promptly file a complaint when she became aware of Father's whereabouts. Father contacted Mother through Facebook in 2011. Mother denied Father's friend request and blocked Father's access. Mother took no active steps to seek child support until four years later in 2015.

The trial court is required to rely on the evidence presented at trial. Both parties testified on direct examination, cross examination, and answered questions asked by the court. No other evidence, documents, or exhibits were presented to the trial court. Based on the notes of testimony and credibility determinations the trial court found no compelling circumstances from which to fashion an equitable remedy contrary to current child support statutes, regulations, and case law.

TCO at 6-9 (citations to the record omitted).

We agree with the trial court's interpretation of Rule 1910.17, indicating that a support order is *only* retroactive to the date the support

---

[2] The trial court references the Commonwealth in this context because Mother was represented by the Philadelphia Office of Child Support Enforcement as noted *infra* in its opinion.

complaint was filed, as opposed to a situation where a petition for modification of a prior support order was filed. The cases cited by Mother and the court reference retroactivity; however, those cases and others located by this Court note that retroactivity to the date the complaint was filed is preferable and that if the court denies retroactivity to the date of the complaint then the court should state on the record its reasons for not so ordering retroactivity. *See Sutliff v. Sutliff*, 489 A.2d 764, 781 (Pa. Super. 1985); *Crawford v. Crawford*, 633 A.2d 155, 162 (Pa. Super. 1993). However, none of the cases provide for retroactivity to a time before the support complaint was filed. Therefore, we conclude that the trial court not only correctly interpreted Rule 1910.17, but also applied it properly.

In addition, we point out that 23 Pa.C.S. § 4352, which is entitled "Continuing jurisdiction over support orders[,]" also supports the trial court's and this Court's interpretation of the statutory basis for deciding the issue before us. Section 4352 deals solely with petitions for modification of support and, specifically, subsection (e) entitled "Retroactive modification of arrears" states:

> **(e) Retroactive modification of arrears.—**No court shall modify or remit any support obligation, on or after the date it is due, except with respect to any period during which there is pending a petition for modification. If a petition for modification was filed, modification may be applied to the period beginning on the date that notice of such petition was given, either directly or through the appropriate agent, to the obligee or, where the obligee was the petitioner, to the obligor. However, modification may be applied to an earlier period if the petitioner was precluded from filing a petition for modification by reason of a

- 10 -

significant physical or mental disability, misrepresentation of another party or other compelling reason and if the petitioner, when no longer precluded, promptly filed a petition. In the case of an emancipated child, arrears shall not accrue from and after the date of the emancipation of the child for whose support the payment is made.

23 Pa.C.S. § 4352(e). Thus, again it is evident that orders directing payment of support pursuant to modification petitions are retroactive to the date notice was given as to the filing of the petition, unless the reasons precluding filing are proven. However, since the matter now on appeal arises from an initial complaint for support, any rules referencing modification petitions are not relevant.

Lastly, we conclude that the trial court's reasons for denying Mother's petition for retroactive child support, based on its factual determinations relating to the evidence presented, are not an abuse of discretion. The trial court's recitation of the testimony presented and its credibility determinations, quoted above, support its conclusion that Mother is not entitled to an equitable remedy that can overcome what has long been the procedure followed in support matters.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/26/2016