**Linda D. HAMILTON, Appellee,**

v.

**Odis HAMILTON, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 2001.

Filed March 19, 2002.

David J. Rhodes, Erie, for appellant.

Dennis V. Williams, Erie, for appellee.

BEFORE: HUDOCK, MUSMANNO, and TODD, JJ.

TODD, J.

¶ 1 Odis Hamilton, Jr. appeals the order denying his petition to dispute paternity in this child support action regarding the child ("A.J.") of Hamilton's former wife, Linda D. Hamilton ("Mother"). We affirm.

¶ 2 Mother gave birth to her daughter, A.J., on January 22, 1990 when she was unmarried and prior to her relationship with Hamilton. She listed Craig Jones as the father on A.J.'s birth certificate. It is undisputed that Hamilton is not the biological father of A.J. In 1992, Mother married Derrick Weaver. Once in 1991, and again in 1992 during her marriage to Weaver, Mother filed support actions against other individuals who were later excluded by blood tests as being the father of A.J. In 1993, Mother and Hamilton began a relationship while she was still married to Weaver, and in July 1993, Hamilton signed an Acknowledgment of Paternity, knowing that he was not the biological father of A.J., then three years old. Mother divorced Weaver in 1995 and married Hamilton three months later. Between July 1993 and December 2000, Mother filed six support actions against Hamilton, withdrawing all but the current one, which was filed in December 2000, the month in which they separated. Hamilton filed for divorce in January 2001. In response to this most recent support action, in February 2001, Hamilton filed a Petition to Dispute Paternity of a Minor Child, requesting that his Acknowledgment of Paternity be rescinded and requesting blood tests.

¶ 3 Hamilton previously had not challenged paternity, and, since beginning his relationship with Mother in 1993, has acted and held himself out as A.J.'s father, car-

ing for her, taking her to the doctor, going to parent-teacher conferences, etc. A.J., who is now 12 years old, refers to Hamilton as "Dad". As a result, the trial court concluded that Hamilton was estopped from denying paternity and, accordingly, denied his petition to dispute paternity on May 4, 2001. A child support order requiring Hamilton to pay support for A.J. was entered on May 15, 2001, and became final 10 days later as no hearing was demanded. *See* Pa.R.C.P.1910.11(h). This timely appeal followed.

¶ 4 On appeal, Hamilton asserts that the trial court erred in holding that he was estopped from denying paternity because: (a) when he signed the Acknowledgment of Paternity, he was unrepresented by counsel, the contents were not explained to him, and he did not understand the effect of the Acknowledgment of Paternity; (b) Mother acted in a fraudulent manner in procuring his signature on the Acknowledgment of Paternity and in seeking support from him only after failed attempts to obtain support from two other individuals; (c) his relationship with A.J. was that of a step-parent, such that no legal obligation to provide support exists following termination of marriage; (d) Mother concedes that he is not the father of A.J.; and (e) Mother is estopped from asserting a paternity claim against him as she has previously held out another individual as the father of A.J. (Brief for Appellant, at 8.)

¶ 5 The concept of paternity by estoppel has been applied in circumstances where a child or mother seeks child support from a purported father who has held himself out to the child and community as the father, but then attempts to deny paternity when support is sought. As explained by our Supreme Court in *Fish v. Behers*, 559 Pa. 523, 741 A.2d 721 (1999):

Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at "achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child."

*Fish*, 559 Pa. at 528, 741 A.2d at 723 (quoting *Freedman v. McCandless*, 539 Pa. 584, 591–92, 654 A.2d 529, 532–33 (1995)). The Court added:

Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father.

*Fish*, 559 Pa. at 529–30, 741 A.2d at 724 (quoting *Brinkley v. King*, 549 Pa. 241, 249–50, 701 A.2d 176, 180 (1997)).

¶ 6 The trial court concluded that Hamilton had an obligation to support A.J. because, from the beginning of his relationship with Mother, Hamilton held out A.J. as his own. The trial court made the following observations about the extent of Hamilton's relationship with A.J.:

[T]he Child was three (3) years old when Hamilton executed the acknowledgement of paternity. She is now eleven

(11) years old.[1] Hamilton [is] the only father the Child has ever known. As a toddler, Hamilton would feed the Child, change her diapers and cook for her. If she was sick, he would take her to the doctor and, on one occasion, to the emergency room. In all capacities since 1993, Hamilton has acted as the Child's father, caring for her in Mother's absences, going to teacher-parent conferences as the father, taking the Child to medical appointments as the father, listing himself as the father on the emergency room forms when he had to take the child to the emergency room. The Child calls Hamilton "Dad" and from 1993 onward, Hamilton never told the Child he was not her father. Hamilton refers to himself as the Child's dad in the presence of the Child, Mother and third parties.

(Trial Court Opinion, 5/4/01, at 3.) Hamilton does not attempt to refute this characterization of his relationship with A.J.; rather, Hamilton argues that the circumstances do not warrant applying paternity by estoppel. We disagree, and find that the trial court correctly held that he was estopped from denying paternity.

¶ 7 Hamilton's reliance on *Garman v. Garman*, 435 Pa.Super. 590, 646 A.2d 1251 (1994) (plurality decision), is misplaced. There, Garman married mother, who had an eight-year-old son, Christopher. Christopher was undisputedly neither the biological nor adoptive son of Garman. Soon after their marriage, the couple had a daughter and Garman, to facilitate changing Christopher's surname to Garman, signed an affidavit indicating he was Christopher's natural father, and later signed an Acknowledgement of Paternity during a support hearing. The couple separated after four years of marriage and, based solely on the Acknowledgement of Paternity, the trial court entered a support order

requiring Garman to support Christopher; this order was withdrawn at mother's request, then later reentered at her request. Garman appealed.

¶ 8 This Court concluded that by requesting withdrawal of the support order, mother "formally acknowledged the erroneous paternity determination at the support conference." *Id.* at 595, 646 A.2d at 1253. More importantly for the instant case, however, this Court, noting that the paternity by estoppel doctrine "is premised on the level of the relationship between that father and child," *id.*, stated that the "record clearly establishes that there is no father[-]child relationship between Appellant and Christopher," *id.* We reversed the support order, the sole basis of which appeared to be Garman's Acknowledgement of Paternity, and noted that Garman, as a former step-parent, otherwise had no duty to support. By contrast, here, there is ample evidence of a father-child relationship between Hamilton and A.J.

¶ 9 It is true, as Hamilton argues, that step-parents are not liable for child support following the dissolution of a marriage, even where a step-parent assumes *in loco parentis* status. *See Garman, supra; Drawbaugh v. Drawbaugh*, 436 Pa.Super. 57, 647 A.2d 240 (1994). However, that fact does not prevent application of the paternity by estoppel doctrine. Where a step-father holds the child out as his own, he nonetheless may be estopped from denying paternity. *See Fish, supra.* The cases which Hamilton cites are not to the contrary. *See Garman, supra* (court found no father-child relationship had developed); *Drawbaugh, supra* (no issue of paternity by estoppel).

¶ 10 Hamilton further argues that estoppel should not apply here because of Mother's alleged fraudulent conduct. Spe-

---

1. A.J. is now 12 years old.

cifically, Hamilton asserts that Mother "perpetuated [sic] a fraud or misrepresentation upon Hamilton in deceiving him into executing the acknowledgment of paternity, knowing that Hamilton was not the child's biological father" and that Mother "has engaged in a fraudulent pattern of conduct with regard to her attempts to secure support for" A.J. (Brief for Appellant, at 18.)

¶ 11 We agree with Hamilton that evidence of fraud is relevant to the application of paternity by estoppel. *See, e.g., Kohler v. Bleem,* 439 Pa.Super. 385, 654 A.2d 569 (1995); *Sekol v. Delsantro,* 763 A.2d 405 (Pa.Super.2000). However, Hamilton does not cite to any evidence supporting a conclusion that Mother's actions fraudulently caused him to acknowledge paternity. Nor do we view her multiple attempts to secure support from other parties, even were we to conclude these actions were fraudulent in nature, to affect our determination that Hamilton, since 1993, held himself out as A.J.'s father. *See Sekol,* 763 A.2d at 410–11 & n. 7. Thus, we reject his argument that Mother's actions somehow thwart application of estoppel.

¶ 12 While it is clear, and indeed was never in dispute, that Hamilton is not A.J.'s biological father, he has truly acted as the child's father and "the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized." *Commonwealth ex rel. Gonzalez v. Andreas,* 245 Pa.Super. 307, 312, 369 A.2d 416, 419 (1976). Finding that the record fully supports the trial court's application of paternity by estoppel, and finding Hamilton's arguments to the contrary unpersuasive, we affirm the order of the trial court.

¶ 13 Order affirmed.