J-S25001-19

2019 PA Super 318

| | |
|---|---|
| S.M.C.<br><br>Appellee<br><br>v.<br><br>C.A.W.<br><br>Appellant | IN THE SUPERIOR COURT<br>OF PENNSYLVANIA<br><br><br><br><br><br>No. 1802 MDA 2018 |

Appeal from the Order Entered October 12, 2018
In the Court of Common Pleas of Huntingdon County
Domestic Relations at Nos: 4115-2016

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

OPINION BY STABILE, J.: **FILED OCTOBER 22, 2019**

Appellant, C.A.W., an adult male, lived together with Appellee, S.M.C., an adult female, and Appellee's daughter ("Child") for almost twelve years. Appellant held himself out as Child's father, supported Child financially and claimed Child as a dependent on many of his tax returns. After Appellant and Appellee ended their relationship, Appellant refused to continue providing Child with financial support and cut off virtually all contact with Child. Appellee filed an action for child support, and the trial court ordered Appellant to pay support under the doctrine of paternity by estoppel. Based on the test for paternity by estoppel articulated in **K.E.M. v. P.C.S.**, 38 A.3d 798 (Pa. 2012), we conclude that the trial court acted within its discretion by requiring Appellant to pay support. Accordingly, we affirm.

Following evidentiary hearings that included testimony from, Appellant, and a child psychologist, Mark Peters, the court found the following facts. In

2002, Child was born to Appellee and H.N., the natural mother and father, respectively. Appellee and H.N. never married, H.N. had virtually no contact with Child, and H.N. never provided financial support or performed parental duties for Child. Appellee filed a child support action against H.N., but it was dismissed because he could not be located.

In January 2003, Appellee began an intimate relationship with Appellant. From April 2003 through January 2015, Appellee and Child lived together with Appellant in Appellant's home. Appellant held himself out to be Child's father and performed parental duties on Child's behalf, treating Child the same as his own biological daughters. Appellant referred to Child as his daughter when introducing her to third parties, and Child referred to Appellant as her father and/or her daddy. Appellant claimed the child dependency tax exemption on his federal income tax returns for Child in tax years 2003, 2004, 2005, 2006, 2007, 2011 and 2012. Appellee was employed outside the home from 2007 through 2010, but her income was insufficient to support Child.

In January 2015, the relationship between Appellee and Appellant ended. Appellee and Child left Appellant's house, and Appellant stopped all financial support to Child and all contact with Child, except for a few visits. Appellant also began a new relationship with another woman. Appellee obtained public assistance but has been unable to do anything financially for Child, such as celebrate Christmas.

After meeting with Child four times, child psychologist Peters opined that Child viewed Appellant as her *de facto* emotional parent and had a positive

and stable relationship with him while they resided together. Child reported that their relationship changed after she left Appellant's house. During the first hearing in this case, Appellant walked by Child without acknowledging her, leaving Child hurt and confused. Peters diagnosed Child as experiencing an adjustment disorder with mixed anxiety and depression.

Based on Peters' testimony, the court determined that Child suffered a serious adverse emotional impact. The court also concluded it was in Child's best interests to apply the paternity by estoppel doctrine against Appellant and require Appellant to pay support. The Huntingdon County Domestic Relations Section calculated Appellant's support obligation, and an interim support order was entered. Appellant filed a timely *de novo* objection to the interim order, which the trial court dismissed. This timely appeal followed. The sole question in this appeal is whether the trial court abused its discretion in concluding that Appellant owed a duty of support under the paternity by estoppel doctrine.

We review support orders for abuse of discretion. *V.E. v. W.M.*, 54 A.3d 368, 369 (Pa. Super. 2012). We cannot reverse the trial court's support determination unless it is unsustainable on any valid ground. *Kimock v. Jones*, 47 A.3d 850, 853–54 (Pa. Super. 2012). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." *V.E.*, 54 A.3d at 369 (internal quotation marks and

- 3 -

brackets omitted).  "The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa. Super. 2007).

As our Supreme Court has explained, the paternity by estoppel doctrine permits a trial court to determine a child's parentage for support purposes based on the actions of the child's mother and/or putative father.

> Estoppel in paternity actions is merely the legal determination that because of a person's conduct (*e.g.*, holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. . . . [T]he doctrine of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child.

*Fish v. Behers*, 741 A.2d 721, 723 (Pa. 1999) (quoting *Freedman v. McCandless*, 654 A.2d 529, 532-33 (Pa. 1995)) (internal quotation marks omitted).  Estoppel rests on the public policy that "children should be secure in knowing who their parents are.  If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he had known all his life is not in fact his father." *T.E.B. v. C.A.B.*, 74 A.3d 170, 173 (Pa. Super. 2013).

The paternity by estoppel doctrine may apply in circumstances where the child's mother was never married to the putative father.  *See R.K.J. v.*

***S.P.K.***, 77 A.3d 33 (Pa. Super. 2013), *appeal denied*, 84 A.3d 1064 (Pa. 2014) (affirming the finding of paternity by estoppel where the mother was married to another man at the time of the child's birth, and where the mother and the putative father resided together for six years but never married). Moreover, the paternity by estoppel doctrine may apply even where the putative father's relationship with the mother began years after the child's birth and where it was undisputed that the putative father was not the biological father. ***See Hamilton v. Hamilton***, 795 A.2d 403 (Pa. Super. 2002) (affirming the finding of paternity by estoppel where the putative father did not begin a relationship with the child's mother until approximately three years after the child's birth and where it was undisputed that the child was not the putative father's biological child). In ***Hamilton***, this Court made clear that the undisputed lack of a biological relationship does not defeat the application of paternity by estoppel. We explained,

> [w]hile it is clear, and indeed was never in dispute, that [the putative father] is not [the child's] biological father, he has truly acted as the child's father and "the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized."

***Id.*** at 407 (quoting ***Commonwealth ex rel. Gonzalez v. Andreas***, 369 A.2d 416, 419 (Pa. Super. 1976)).[1]

---

[1] The putative fathers in ***R.K.J.*** and ***Hamilton*** both signed acknowledgements of paternity despite knowing that they were not biological parents. ***R.K.J.***, 77 A.3d at 40; ***Hamilton***, 795 A.2d at 404. Neither opinion explored the legal

More recently, our Supreme Court held in **K.E.M.** that the paternity by estoppel doctrine continues to remain good law in Pennsylvania. There, the child's mother sought child support from the alleged biological father, P.C.S., with whom she had an extramarital affair. The trial court held that the mother's husband, H.M.M., had held himself out as the child's father and thus was the father for support purposes under paternity by estoppel principles. The majority decision, authored by then-Justice, and now-Chief Justice Saylor, held that "paternity by estoppel continues to pertain in Pennsylvania" at common law, but "only where it can be shown, on a developed record, that it is in the best interests of the involved child." **Id.**, 38 A.3d at 810. The Court remanded for further proceedings to determine whether paternity by estoppel was in the child's best interests. In a footnote, the Court suggested that courts have been "most firm" in sustaining a finding of paternity based on the child's "need for continuity, financial support, and potential psychological security arising out of an established parent-child relationship." **Id.** at 810 n.12.

―――――――――――――――――――――

relevance, if any, of those acknowledgments. Instead, the opinions focused on the fact that the putative fathers held out the children to be their own and acted as parents would act. **See R.K.J.**, 77 A.3d at 40 ("[The putative father] held himself out as [the child's] father for almost six years, lived with [the child] and his mother in his home, told [the child] that he was his father, and provided all financial support for [the child.]"); **Hamilton**, 795 A.2d at 406 (quoting Trial Court Opinion, 5/4/01, at 3) ("[The putative father] has acted as the [c]hild's father . . . . The [c]hild calls [the putative father] "Dad" . . . . [The putative father] refers to himself as the [c]hild's dad in the presence of the [c]hild, [the m]other[,] and third parties.").

Following **K.E.M.**, in a case with facts similar to the present case, we held that paternity by estoppel applied to the appellant, who held himself out as the child's father despite not being the biological parent. **R.K.J. v. S.P.K.**, 77 A.3d 33 (Pa. Super. 2013). Unlike the child's biological father, who had no relationship with the child and who never met him, the appellant had held himself out as the child's father, lived with and interacted with the child for nearly six years, told the child he was his father, and supported the child financially. The evidence further demonstrated that it was in the child's best psychological interests for his relationship to continue with the appellant. Following **K.E.M.**, we held that paternity by estoppel obligated the appellant to pay child support. **Id.**, 77 A.3d at 38-40.

As in the foregoing decisions, the evidence in the present case supports the trial court's ruling of paternity by estoppel. Appellant had a long-term *in loco parentis* relationship with Child that began when Child was an infant. Child and Appellee lived in Appellant's home for virtually the first twelve years of Child's life, during which time he held himself out as Child's father, provided most of Child's financial support, listed Child as a dependent on seven years of tax returns, and formed a close emotional bond with Child. After Appellee and Child left Appellant's residence, Child had a continued need for financial support, as Appellant stopped all financial support and Appellee had to obtain public assistance. Child also continued to need Appellant's emotional support, but Appellant stopped all contact with Child except for several isolated visits,

causing Child to suffer an adjustment disorder with mixed anxiety and depression. Based on the fact that Appellant held out Child to be his own for well over a decade, together with Child's need for continued financial and psychological support, we conclude the court did not abuse its discretion in holding that it was in Child's best interests for Appellant to be liable for child support based upon paternity by estoppel.

Appellant argues that he is not required to pay support in view of our Supreme Court's decision in *A.S. v. I.S.*, 130 A.3d 769 (Pa. 2013). We disagree, as *A.S.* is both factually and legally distinguishable from this case.

In *A.S.*, Mother had twin sons with the children's biological father in 1998. In 2005, Mother married stepfather ("Stepfather"). Mother, Stepfather and the children relocated to Pennsylvania. Stepfather never held children out as his own, and the children clearly knew that Stepfather was not their biological father. In 2009, Mother and Stepfather separated, and Stepfather filed for divorce. When Mother announced her plan to relocate to California, Stepfather filed a custody complaint and an emergency petition to prevent Mother from relocating, asserting that he stood *in loco parentis* to the children. Mother filed a complaint seeking child support. The trial court granted shared custody, but without holding a hearing on the support issue, it held that Stepfather did not owe support. Mother appealed.

Despite its observation that "*in loco parentis* status alone and/or reasonable acts to maintain a post-separation relationship with stepchildren

are insufficient to obligate a stepparent to pay child support for those children," *id.*, 130 A.3d at 770, the Supreme Court held that Stepfather was required to pay child support. Critical to the Court's conclusion was the finding that Stepfather took "far greater" steps "than that of a stepparent desiring a continuing relationship with a former spouse's children." *Id.* He engaged in a "relentless pursuit" of parental duties by "[haling] a fit parent into court," "litigat[ing] and obtain[ing] full legal and physical custody rights," and "assert[ing] those parental rights to prevent a competent biological mother from relocating with her children." *Id.* Consequently, "Stepfather has taken sufficient affirmative steps legally to obtain parental rights and should share in parental obligations, such as paying child support. Equity prohibits Stepfather from disavowing his parental status to avoid a support obligation to the children he so vigorously sought to parent." *Id.* at 770-71. The majority was careful to emphasize

> that we are not creating a new class of stepparent obligors and our decision today comports with the line of cases that have held that *in loco parentis* standing alone is insufficient to hold a stepparent liable for support. The public policy behind encouraging stepparents to love and care for their stepchildren remains . . . relevant and important today[.] However, when a stepparent does **substantially more** than offer gratuitous love and care for his stepchildren, when he instigates litigation to achieve all the rights of parenthood at the cost of interfering with the rights of a fit parent, **then the same public policy attendant to the doctrine of paternity by estoppel is implicated**: that it is in the best interests of children to have stability and continuity in their parent-child relationships. By holding a person such as Stepfather liable for child support, we increase the likelihood that only individuals who are truly

dedicated and intend to be a stable fixture in a child's life will take the steps to litigate and obtain rights equal to those of the child's parent.

*Id.* at 771 (emphasis added).

As can be seen, *A.S.* is factually distinguishable from the present case in at least three important respects. First, unlike Stepfather in *A.S.*, who never held children out as his own, Appellant here held Child out as his own and supported her financially for virtually her entire life, beginning when Child was an infant and continuing for almost the next twelve years. Second, unlike the children in *A.S.*, who knew that Stepfather was not their natural parent, [2] Child and Appellant bonded in the same way a child bonds with her natural parent, and Child became both psychologically and financially dependent upon Appellant. Third, Stepfather in *A.S.* took affirmative action post-separation from Mother to assert parental rights to the children. Because of these factual differences, *A.S.* narrowly falls outside the contours of paternity by estoppel, a point recognized in the dissent authored in *A.S.* by now-Chief Justice Saylor. *Id.* at 772 ("the common law has recognized a presumption of paternity and the doctrine[] of paternity by estoppel . . . neither of which appears to be the basis for the majority's decision") (citation omitted). As a result, even though

---

[2] The fact a child may become aware that his putative father is not his biological father, as here, is not necessarily fatal to a finding of paternity by estoppel. While the law cannot prohibit a putative father from informing a child of their true relationship, it can prohibit him from avoiding the obligations that their assumed relationship would otherwise impose. *K.E.M.* 38 A.3d at 808.

- 10 -

*A.S.* was not *per se* a paternity by estoppel case, the remedy applied in that case was **consistent with** paternity by estoppel because it advanced the same public policy, *i.e.*, ensuring stability and continuity in the parent-child relationship. The present case is distinguishable from *A.S.* because Appellant's duty to pay child support rests squarely upon paternity by estoppel.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2019