2024 PA Super 145

| THERRI L. MAZZARESE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICOLE L. MAZZARESE | : | |
| | : | |
| Appellant | : | No. 428 WDA 2023 |

Appeal from the Order Entered March 13, 2023
In the Court of Common Pleas of Somerset County
Domestic Relations at No(s): DRS 0018721

BEFORE: DUBOW, J., MURRAY, J., and SULLIVAN, J.

OPINION BY SULLIVAN, J.: **FILED: July 15, 2024**

In this matter of first impression, Nicole L. Mazzarese ("Mother") appeals from the order denying her demand that the incomes of Therri L. Mazzarese and Michael A. Mazzarese (collectively, "[M]aternal grandparents") be included in the calculation of her child support obligation. We affirm.

We take the underlying facts and procedural history in this matter from the trial court's opinion and our review of the certified record. Mother is the parent of three daughters, E.E.M. (born in 2008), A.L.M. (born in 2012), and C.D.M. (born in 2018). **See** Trial Court Opinion, 3/10/23, at 1 n. 1. The fathers of E.E.M. and A.L.M., who are not parties to the instant proceedings, are known. The father of C.D.M. is unknown. **See id**.

Maternal grandparents filed a complaint for custody and a petition for special relief in December 2020. The trial court summarized the allegations in the custody complaint stating, "the children have essentially lived their

entire lives with the [M]aternal grandparents, absent short periods of time when Mother resumed custody[,] and then would disappear without notification to the [M]aternal grandparents, leaving the [M]aternal grandparents as default caretakers without knowledge of Mother's whereabouts." *Id*. at 2. Mother filed preliminary objections in the custody case challenging Maternal grandparents' standing. *See id*. The trial court issued an order dismissing her preliminary objections finding Maternal grandparents "had been the primary caretakers of the children, with the consent of Mother[,] for the majority of the children's lives." *Id*.

As of the date of the trial court's opinion, the custody issue had not been resolved. *See id*. at 2-3; *see also* N.T., 12/14/22, at 19-20 (discussing delays in resolving the custody case). The two known fathers reached custody agreements with the Maternal grandparents. *See id*. at 1 n. 1. Mother has objected to Maternal grandparents' request for custody and the parties are operating under an interim order, *entered by consent*, giving Maternal grandparents primary physical custody of the children. *See id*. at 2; *see also* N.T., 12/14/22, at 9, 12, 16, 31. The parties share legal custody of the children and Mother has partial physical custody, although the parties dispute whether Mother has been regularly exercising her partial custody. *See id*.; *see also* N.T., 12/14/22, at 34-36.

In 2021, Maternal grandmother filed the instant complaint for child support against Mother. As detailed by the trial court, there has been

significant litigation in the matter concerning Mother's income, the calculation of the unknown father's income, and Mother's complaint that Maternal grandparents' income should be included in the child support calculations. *See id*. at 3-4. The issues concerning Mother's income and the inclusion of income for the unknown father are resolved; the sole issue at the latest hearing concerned whether Maternal grandparents' income should be included in the calculation of Mother's child support obligation. *See id*. at 4. Following a hearing in December 2022, the trial court determined it should not be. *See id*. at 6. The instant, timely appeal followed.[1]

On appeal, Mother raises a single issue:

> Whether the court erred and violated [Mother's] due process rights by failing to provide her with an evidentiary hearing to determine her parental fitness?

Mother's Brief at 2 (unnecessary capitalization corrected).[2]

---

[1] Mother and the trial court complied with Pa.R.A.P. 1925.

[2] Although Mother's statement of the questions raises a single issue, Mother has argued two issues consistently since the Maternal grandparents filed the support petition at issue: (1) the trial court erred declining to include Maternal grandparents' incomes in Mother's child support calculations; and (2) the court erred by denying Mother an evidentiary hearing in the support proceeding regarding Maternal grandparents' *in loco parentis* status and her fitness to parent. *See* Mother's Brief at 4-7.

The Rule of Appellate Procedure governing the statement of questions involves provides that it:

> **must** state concisely the issues to be resolved, expressed
> in the terms and circumstances of the case but without

*(Footnote Continued Next Page)*

- 3 -

We begin, as always with our standard of review.

---

unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.

Pa.R.A.P. 2116 (emphasis added).

The Rules of Appellate Procedure also provide:

These rules shall be liberally applied to secure the just, speedy, and inexpensive determination of every matter to which they are applicable. In the interest of expediting decision . . . an appellate court may . . . disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction.

Pa.R.A.P. 105(a).

Here, the issue of whether the grandparents' income should be included in the child support calculation was at the heart of the litigation below. Mother raised the issue in her Pa.R.A.P. 1925(b) statement and the trial court addressed it in its opinion. Moreover, Maternal grandparents discuss the merits of the issue in their brief. Thus, there is no impediment to our addressing the merits of this issue, and we decline to find waiver on this basis. **See Commonwealth v. Talley**, 236 A.3d 42, 50 n.4 (Pa. Super. 2020), **affirmed**, 263 A.3d 485 (Pa. 2021) (addressing the merits of an alternative argument raised in the argument section of appellant's brief even though it was not included in the statement of questions involved because the omission did not hamper the Court's review); **Trust Under Will of Augustus T. Ashton**, 233 A.3d 869, 874 n. 5 (Pa. Super. 2020), **reversed in part on unrelated grounds**, 260 A.3d 81 (Pa. 2021) (explaining that the opinion deemed two issues not included in the statement of the questions involved as being raised on appeal where the issues were litigated at the trial court, raised in the appellant's rule 1925(b) statement, included in the argument section of the brief, discussed in the briefs of all parties to the appeal, and their omission from the statement of the questions involved appeared to be a clerical error); **Rock v. Rangos**, 61 A.3d 239, 249 (Pa. Super. 2013) (declining to find waiver where appellant raised four issues in his statement of questions involved but argued seven issues in his argument section because "nothing substantially impedes our ability to review" the arguments).

We review support orders for abuse of discretion. We cannot reverse the trial court's support determination unless it is unsustainable on any valid ground. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses.

*S.M.C. v. C.A.W.*, 221 A.3d 1214, 1217 (Pa. Super. 2019) (internal citations and quotation marks omitted).

Whether, and under what circumstances, a third party, such as a grandparent, can be required to financially support a child is complicated. Under the relevant statutory authority, "***[p]arents*** are liable for the support of their children who are unemancipated and 18 years of age or younger." 23 Pa.C.S.A. § 4321(2) (emphasis added). Likewise, the child support guidelines provide:

**(a) Applicability of the Support Guidelines**.

(1) Except as provided in subdivision (a)(3), the support guidelines determine a . . . ***parent's*** support obligation based on the parties' combined monthly net income, as defined in Pa.R.C.P. No. 1910.16-2, and the number of persons being supported.

(2) If a person caring for or having custody of a minor child, ***who does not have a duty of support to the minor child***, initiates a child support action as provided in Pa.R.C.P. No. 1910.3:

(i) the complaint shall name the parents as defendants;

(ii) in determining the basic child support obligation, the monthly net income for the individual initiating the action ***shall not be considered*** in the support calculation by the trier-of-fact[.]

Pa.R.Civ.P. 1910.16-1(a)(1) and (2)(i-ii) (emphases added).[3]  Thus, there is no statutory support for Mother's claim that the income of the maternal grandparents should be included in the child support calculation.

This Court has not previously addressed the support obligations of grandparents but has on multiple occasions addressed the support obligations of stepparents or paramours.  In **Commonwealth ex rel. McNutt v. McNutt**, 496 A.2d 816 (Pa. Super. 1985), we held that a stepfather who had maintained contact with his stepdaughter following his divorce from the child's mother was **not** liable for child support.  **See id**. at 817-18.  In so holding, we recognized that imposing a support obligation under such circumstances would send an undesirable message discouraging relatives from acts of kindness toward children in need of assistance:

> If we were to hold that a stepparent acting *in loco parentis* would be held liable for support even after the dissolution of the marriage[,] then all persons who gratuitously assume parental duties for a time could be held legally responsible for a child's support.  **It is not uncommon for a grandparent, an aunt or uncle or an older sibling to assume responsibilities for parenting when the natural parents are absent.  These acts of generosity should not be discouraged by creating a law which would require anyone who begins such a relationship to continue financial support until the child is eighteen years old**.

**Id**. at 817 (italics and emphasis added).

---

[3] There is no statutory definition of "parent."  However, there is a statutory definition of "child" and "children."  They are defined as "[i]ncludes children by birth or adoption."  1 Pa.C.S.A. § 1991.

- 6 -

Our Supreme Court reached a different result concerning a stepparent's support obligation in **A.S. v. I.S.**, 130 A.3d 763 (Pa. 2015). There, the Court held a stepfather **was** liable for support where he had raised two non-biological children, exercised partial custody rights after he and the children's mother separated, and filed custody proceedings to prevent mother from moving with the children. **See id**. at 770-71. In imposing financial responsibility on the stepfather, the **A.S.** Court stressed the stepfather's "relentless pursuit" and "repeated litigati[on] for custody rights, and his action in "hal[ing] [sic] a **fit** parent into court." **Id**. at 770 (emphasis added). Similarly, in **S.M.C.**, this Court found a mother's boyfriend liable for child support where he was the only father the child had known, had held himself out as the child's father, and claimed the child as a dependent on his tax returns. **See S.M.C.**, 221 A.3d at 1216.[4]

Finally, the Pennsylvania Supreme Court recently **reversed** this Court's decision that a deceased mother's former paramour was liable for child support in **Caldwell v. Jaurigue**, --- A.3d ---, 2024 WL 2789167 (Pa. 5/31/24). There, a mother's long-term paramour filed for partial custody of her child after the mother's death. **See id**. at *1. This Court had held the paramour was "akin to a stepparent" and stood in loco parentis to the child and therefore affirmed a child support obligation. **See id**. at *4. The Supreme

---

[4] Our decision in **S.MC.** rested largely on the doctrine of paternity by estoppel. **See id**. at 1217-20.

Court disagreed, however. It reiterated its statements in **A.S.** that merely because a person stands *in loco parentis* to a child does not mean the individual is liable for child support, and that the "public policy behind encouraging stepparents to love and care for their stepchildren remains . . . relevant and important . . . . **Id**. at *14. The Court highlighted that its decision turned on the degree of the stepparent's attempt to assume responsibility for the child: in **A.S.** the stepfather sought full physical and **legal** custody to prevent the biological mother from relocating, **see id**. at *11-*12, in **Caldwell** however, the paramour had only **partial** physical custody, and not legal custody, removing the paramour from the definition of a "parent" for purposes of child support. **See id**. at *13-*15.

Here, Mother argues Maternal grandparents' incomes needed to be included in the support calculation because their petition for custody asserts, they stand *in loco parentis* to the children. **See** Mother's Brief at 4-5. Mother contends **A.S.** and **Caldwell**, support her claim.[5] **See id**. at 4-7. Mother endorses an expansive reading of **A.S.** At the hearing, she asserted that:

> [t]he rule of **A.S.** says that when a grandparent or third party interject themselves into the situation and becomes *in loco parentis* to a child, they [too] have the duty of support. This is in fact and this decision eviscerates the rule . . . that is set forth in the Domestic Relations — in the Pennsylvania Rules of Civil Procedure, which says generally don't take into account the income of third parties.

---

[5] We note Mother filed her brief while **Caldwell** was pending before the Supreme Court.

N.T., 12/14/22, at 3.

Mother also maintains the trial court's determination that Maternal grandparents' income need not be included in calculating her child support turned in part "upon whether [Mother] was an unfit parent, or the grandparents held *in loco parentis* status," and thus the trial court "had an affirmative duty to hold a hearing, create a record, and decide the facts" underlying the custody issue. Mother's Brief at 5 (italics added). Mother avers, that under *A.S.* the trial court is required to "try a custody case within a support case" and the key issue is whether Mother "was unfit" as a parent. N.T., 12/14/22, at 10.

The trial court disagreed, opining:

> The Domestic Relations Act is clear that parents of a child have a duty to financially support the child. *See* 23 Pa.C.S.A. § 4321(2). Although the statute does not explicitly express the duty of third parties to provide support, Pennsylvania appellate courts have extended the duty to third parties in certain circumstances. Whether a third party is liable for child support is a question of law. As indicated[,] we have previously found that the maternal grandparents have legally been found to have standing *in loco parentis* to the child[ren]. The term *loco parentis* literally means "in place of a parent", however, **that status alone does not make the maternal grandparents liable to financially support these children.** In *A.S.*, the Supreme Court recognized that there were some situations, **such as where a former step[]parent affirmatively undertakes sufficient legal steps to act as a parent so as to trigger the obligation to pay support**. . ..

> \* \* \* \* \*

> Here, unlike in *A.S.*, an interim determination . . . was made that Mother was not a fit parent . . . and that she had allegedly abandoned the children. . . .Mother consented to the interim order

- 9 -

and no evidentiary hearing has resulted in an order concluding otherwise. Maternal grandparents assumed the parental roles that would otherwise be the responsibility of two fit and willing parents.

* * * * *

Th[at] the natural fathers have not participated in the custody []or support matters, and further, that Mother had consented for [sic] the interim orders that are the subject of the underlying custody matters[] and had[] allegedly abandoned the children for most of their lives, does not require the maternal grandparents to have their income utilized in determining financial support for the children. . . .

* * * * *

Since there is no dispute as to Mother's income calculations, nor is there a specific objection to the methodology utilizing the average income of the three fathers, [the trial court finds] that the child support order which was not specifically challenged on the merits of the guideline calculation outside of the requested inclusion of the maternal grandparents' income, is appropriate and consequently, affirm[s] that order.

Trial Court Opinion, 3/10/23, at 4-7 (emphases added; citation form standardized).

We find no abuse of discretion in the trial court's reasoning. While we have been unable to locate any child support cases involving a dispute between a biological mother and grandparents, this Court has addressed a grandparent's liability for child support in the post-**A.S.** context.

In **S.R.G. v. D.D.G.**, 224 A.3d 368 (Pa. Super. 2019), this Court held a custodial grandfather **not** liable for child support when he and grandmother separated, where the biological parents' rights had not been terminated. We specifically highlighted that although the grandparents were raising the child,

- 10 -

they had not taken "any affirmative steps to be **parents** of the child . . . [and] the record could not support a finding that the child thinks of the parties as anything other than his grandparents." **Id**. at 371 (emphasis added). Rather, we noted the grandparents had "gratuitously and generously filled the parental void" and "assumed the burdens of custody" where "both of the child's biological parents were unfit." **Id**. at 371-72. Thus, we concluded, absent statutory authorization, there was no basis to require grandfather to pay child support. **See id**. **See also J.B.S. v. J.L.S.**, 2021 WL 2446306, at *3 (Pa. Super. Jun. 15, 2021) (unpublished memorandum) (finding grandfather not liable for child support where grandparents had custody of the grandchildren because of parental abandonment; grandparents separated, and grandfather obtained partial custody, because grandparents had not adopted the children but "attempted to fill the large parental void left [by the children's parents]").[6]

Both **S.R.G.** and **J.B.S.** are consistent with our holding in **McNutt** that grandparents or other third-parties who "assume responsibilities for parenting when the natural parents are absent" should not be discouraged from doing so by being required to pay (or, as in the instant matter, have their income counted) for purposes of child support, **McNutt**, 496 A.2d at 817, and the Supreme Court's recognition in **Caldwell** and **A.S.** of the public policy behind

_____

[6] **See** Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

encouraging stepparents (and presumably other close relatives) to love and care for their stepchildren. Moreover, as we stated in **S.R.G.** and **J.B.S.**, when grandparents "attempt[ed] to fill the large parental void" left when the biological parents are unable or unwilling to parent their children, "there is simply no statutory authorization . . . in Pennsylvania to extend[] the duty of child support" to them. **See S.R.G.**, 224 A.3d at 372; **J.B.S.**, 2021 WL 2446306, at *3.

Although the emphasis in **Caldwell** on legal custody as a determinative factor in a third party's liability for child support arguably supports Mother's position, **see Caldwell**, 2024 WL 2789167, at *12-*13, we believe it distinguishable. As the **Caldwell** decision demonstrates, facts and context matter. The stepparent cases detailed in **Caldwell**, do not involve instances where the stepparent is raising the stepchild because of parental inability, but instead instances where a stepparent wishes to retain a relationship with the stepchild after stepparent's relationship with the biological parent ended. **See id**. at *10-*14. In **Caldwell**, the Court reiterated that both as a matter of law and a matter of policy, it was unwilling to discourage "acts of generosity" by "creating a law which would require anyone who begins such a relationship to continue financial support" for the child, particularly where the stepparent did not have "all the rights of parenthood[,]" *i.e.* legal custody. **Id**. at *14 (citations omitted).

Here, although Maternal grandparents have shared legal and primary physical custody of the children, they do not have full legal or physical custody and have not sought to supplant Mother's parental role. In both **A.S.** and **Caldwell** the custody/support petitions centered around the termination of the relationships between the biological parent and stepparent/paramour and the non-biological individual's interest in retaining some form of parental rights even after the termination of the relationship. Here, as the trial court pointed out in its opinion, the children have essentially lived their "entire lives with Maternal grandparents, absent short periods of time when Mother resumed custody[,] and then would disappear without notification . . . leaving the Maternal grandparents as default caretakers without knowledge of Mother's whereabouts." Trial Court Opinion, 3/10/23 at 2. Thus, this case is distinguishable from **A.S.** and **Caldwell** because the parties, and relationships to the biological mother are distinctly different and the factual circumstances effectuating the support sought are distinct.

As discussed **supra**, it appears that none of the biological parents of these young girls are able or willing to provide the consistent parenting required to raise children, and the Maternal grandparents have stepped in and assumed that role out of necessity and to prevent their biological grandchildren from neglect or worse. Thus, we do not find **Caldwell's** holding dispositive in the instant matter. We hold that when grandparents assume custody of children due to parental death, inability, or unwillingness to parent,

but do not seek to terminate the biological parent's rights, they are not "parents" within the meaning of 23 Pa.C.S.A. § 4321(2). *See S.R.G.*, 224 A.3d at 372; *J.B.S.*, 2021 WL 2446306, at *3.

Our holding today recognizes the critical role grandparents (and other relatives) are currently serving in raising children. In a recent article, the American Association of Retired Persons stated that, based upon the most recent United States Census, 7.1 million children are currently residing with grandparents. *See* A.J. Baime, *When Grandparents are Called to Parent — Again*, AARP Magazine, Mar. 2, 2023, at https://www.aarp.org/home-family/friends-family/info-2023/grandparents-become-parents-again.html.[7] These grandparents, assume not only the day-to-day worries and work of raising a child or children but the expenses not covered by child support. It is obvious that grandparents in these situations provide a vital service by keeping children out of our overburdened child welfare system. We perceive neither utility nor equity in a rule that would allow biological parents already benefitting from grandparents' physical, emotional and monetary support of their children to lower the biological parent's child support obligations by factoring in grandparent's income while simultaneously relying on the grandparents to raise their children. *See* 23 Pa.C.S.A. § 4321(2). In addition

_____

[7] Approximately fifty percent of those grandparents are over age sixty and one-third of the grandchildren are under age six. *See id*. These rising numbers are largely attributable to parental incarceration, substance abuse, and children orphaned by the Covid-19 pandemic. *See id*.

to an unsound social policy, this would lead to an absurd result that would certainly deter otherwise caring and concerned grandparents from stepping in and providing much needed support to their grandchildren. Thus, the trial court did not abuse its discretion in declining to include Maternal grandparents' incomes in the biological mother's child support calculation.

Mother next argues the trial court was required to hold a custody hearing within a support proceeding to resolve the issues of Maternal grandparents' *in loco parentis* status and the questions regarding Mothers' fitness. **See** Mother's Brief, at 6-7. Initially, we note, despite Mother's arguments to the contrary, the trial court did not make any new findings; rather, it took judicial notice of the orders already issued in the on-going custody proceedings. **See** N.T., 12/14/22, at 16.

In any event, Mother's argument fails to cite to any legal authority in support of her novel proposition that a trial court is supposed to hold a custody hearing within a support proceeding. **See** Mother's Brief, at 5-7. At the support hearing, Mother relied upon **A.S.** for this proposition. **See** N.T., 12/14/22, at 10-17. However, we have thoroughly reviewed **A.S.** and see nothing which mandates that a trial court in a support proceeding is required to hold a mini-custody trial whenever there is an issue involving third-party support. **See A.S.**, 130 A.3d at 768-71. There is certainly nothing in the history of the proceedings in **A.S.** which shows that the trial court there held a custody hearing within the support proceeding, rather, as in the instant

matter, there were separate proceedings for custody and support. *See id*. at 764-66. Moreover, the Supreme Court did not remand the matter for a mini-custody hearing in the support matter. *See id*. at 771. Rather, the Supreme Court did exactly what the trial court did here, it acknowledged the rulings in the custody matter which had already addressed the issues regarding *in loco parentis* status and the division of custody between the mother and former stepfather. *See id*. at 764-71. Thus, **A.S.** does not support Mother's position. Moreover, we do not find Mother's unsupported argument persuasive. Under Mother's theory, we could be faced with an absurd result where a judge in a custody case finds *in loco parentis* status and a parent unfit and a different judge in a mini hearing in a support proceeding reaches the opposite conclusion.

To the extent Mother may be arguing the trial court's findings with respect to what occurred in the custody proceedings was in error, the claim is not properly before us.[8] The custody orders and transcripts are not incorporated within the certified record. Mother did not file a reproduced record, contrary to the requirements of the Rules of Appellate Procedure. *See* Pa.R.A.P. 2151. This Court has clearly stated it is the appellant's responsibility

---

[8] We have been unable to locate any point in the record where Mother objected to the trial court's recitation of events or disputed that there was an agreed-upon interim order giving Maternal grandparents' primary physical and shared legal custody, or that Maternal Grandparents' have had *de facto* custody of the children for many years. *See* N.T., 12/14/22, at 6, 9-12, 16, 21-22, 30-32, 44-45,

to ensure that the certified record contains all documents necessary so that this Court is able to review her claims. *See Washburn v. Northern Health Facilities, Inc.*, 121 A.3d 1008, 1014 n. 2 (Pa. Super. 2015); Pa.R.A.P. 1926; Pa.R.A.P. 1931.

While Maternal grandparents filed a reproduced record, which included documents from the custody case, we have long held any documents that are contained in the reproduced record but are not a part of the official certified record do not exist. *See Daniel v. Wyeth Pharmaceuticals, Inc.*, 15 A.3d 909, 936 n.1 (Pa. Super. 2011) (Fitzgerald, J. concurring); Pa.R.A.P. 1921 note. We direct all parties to Pa.R.A.P. 1926, which delineates the proper method for supplementing the record. Thus, even if Mother claims the trial court's recitation of what occurred in the custody proceedings was in error, we are unable to reach the merits of that claim.

Therefore, for the reasons discussed above, we affirm.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/15/2024