torney who announces an intent to seek the death penalty against a criminal defendant premised on a legal interpretation of a statute, or a negligence plaintiff in a minor impact soft tissue case who indicates an intent to seek punitive damages. Declaratory relief would not be available to the defendants threatened with prosecution or the lawsuit. Rather, we trust that a trial court will resolve any legal disputes that arise in the context of the criminal or negligence action initiated by the prosecutor or plaintiff. Following resolution, the issues would be reviewed on appeal.

In this case, DEP's legal interpretation of the Clean Streams Law is not independent of its allegations that EPC failed to abate the contamination caused by its water leakage. In this respect, there are factual matters for the EHB to resolve regarding EPC's continued contamination. Without the interference of a declaratory judgment action, the EHB will resolve, in due course, DEP's legal interpretation and apply it to the factual circumstances of EPC's contamination. The aggrieved party may, or may not appeal. Without an appeal, there will be nothing for the courts to decide.

Finally, I am not persuaded that the Majority's conclusion flows from *Donahue.* As the Commonwealth Court explained, the declaratory judgment action in *Donahue* challenged the Office of Open Records (OOR)'s declaration in litigation that it would interpret a provision of the Right to Know Law (RTKL), 65 P.S. § 67.901, in a manner detrimental to, *inter alia,* the Office of the Governor (OG). OOR, as the tribunal tasked with adjudicating requests under the RTKL, had the authority to impose its interpretation on OG. In contrast, DEP has no authority to impose its interpretation of the Clean Streams Law on EPC. Rather, it may interpret the statute and make a legal argument to the

EHB, while the EHB has the authority to impose penalties.

Because I see nothing in the factual or legal circumstances of this case to warrant departure from our well-established rules of jurisprudence limiting a party's right to seek declaratory relief in the courts, I respectfully dissent.

**A.S., Appellee,**

v.

**I.S., Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 17, 2015.
Decided Dec. 29, 2015.

Z.V., for Z.V.

I.S., for I.S.

Joanne E. Kleiner, Esq., Joanne E. Kleiner & Associates, Jenkintown, for A.S.

SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.

## OPINION

Justice BAER.

We granted review to determine whether a stepparent may be obligated to

pay child support for his former spouse's biological children when he aggressively litigated for shared legal and physical custody of those children, including the filing of an action to prevent his former spouse from relocating with them. For the reasons set forth herein, we hold that when a stepparent takes affirmative legal steps to assume the same parental rights as a biological parent, the stepparent likewise assumes parental obligations, such as the payment of child support.

Appellant, I.S. ("Mother"), has twin sons who were born in Serbia in 1998.[1] In 2005, Mother married Appellee, A.S. ("Stepfather") in Serbia and subsequently the family relocated to Pennsylvania.[2] The parties and the children resided together until 2009 when the parties separated. Following their separation, Mother and Stepfather informally shared physical custody of the children, who were about eleven years of age. In 2010, Stepfather filed for divorce.

Mother graduated from law school in May 2012 and took the California bar examination in July 2012, planning to relocate to California with the children at the end of September that year. In August 2012, Stepfather filed a complaint for custody of the children and an emergency petition to prevent Mother's relocation, asserting that he stood *in loco parentis* to the children. The trial court immediately granted Stepfather's emergency petition, entering an order prohibiting Mother from leaving the jurisdiction with the children. Additionally, the trial court entered a temporary custody agreement awarding Mother primary physical custody and Stepfather partial custody every other weekend and every Wednesday evening. Subsequently, the parties attended the court-ordered custody mediation, parenting seminar, and custody conciliation.

On February 13, 2013, the trial court held a hearing on Mother's various preliminary motions seeking to dismiss Stepfather's complaint for custody for lack of standing. The trial court concluded that Stepfather stood *in loco parentis* to the children, and therefore it denied Mother's motions.[3] Following an interview with the children, the trial court entered a second interim custody order granting the parties shared physical custody and, thus, expanded Stepfather's custodial time with the children.

The case proceeded to a full custody hearing in July 2013. At its conclusion, the trial court entered a final custody order granting the parties shared legal as well as physical custody, with each enjoying alternating weeks.[4] The trial court

1. There is a Serbian court order between Mother and the children's biological father that governs both child custody and child support. However, Mother never sought child support from the biological father, and he has not sought custody. Indeed, he has not been involved with his children since 2006.

2. The parties are currently divorced, and therefore A.S. is actually the former stepfather of the children. However, because the courts below referred to him as "Stepfather," we will also do so for purposes of consistency.

3. *See* 23 Pa.C.S. § 5324 (providing "[a] person who stands in loco parentis to the child" has standing to seek any form of child custody).

The phrase *"in loco parentis"* refers to "a person who puts himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption." *Commonwealth ex rel. Morgan v. Smith,* 429 Pa. 561, 241 A.2d 531, 533 (1968). The status of *in loco parentis* embodies two ideas: 1) the assumption of a parental status; and 2) the discharge of parental duties. *Id.*

4. Shared legal custody is defined as "[t]he right of more than one individual" to "make major decisions on behalf of the child, includ-

further directed the parties to participate in co-parenting counseling and prohibited either party from relocating with the children without the permission of the other party or the court.[5]

Meanwhile, on September 28, 2012 (four days after the trial court entered its order granting Stepfather's emergency custody petition and preventing Mother from relocating to California), Mother filed a complaint for child support against Stepfather. Following a support conference on March 4, 2013, a support master dismissed Mother's complaint reasoning that Stepfather owed no duty to support the children because he is not their biological father. Master's Recommendation, March 4, 2013, at 1; see, e.g., DeNomme v. DeNomme, 375 Pa.Super. 212, 544 A.2d 63, 65 (1988) (stating that generally a stepparent does not owe a duty of support to his stepchildren). Mother filed exceptions to the master's recommendation, contending that Stepfather should be treated as a biological parent for purposes of support because he litigated and obtained the same legal and physical custodial rights as a biological parent, and, further, successfully prevented Mother's relocation with the children.

On May 22, 2013, the trial court entered an order affirming the master's decision to dismiss Mother's support complaint. The trial court cited governing precedent es-tablishing that under Pennsylvania law, a stepparent generally is not liable for child support following the dissolution of a marriage. Trial Court Opinion, July 8, 2013, at 3–4 (citing *Commonwealth ex rel. McNutt v. McNutt*, 344 Pa.Super. 321, 496 A.2d 816, 817 (1985) (holding that *in loco parentis* status alone is insufficient to create a stepparent-support obligation); *Garman v. Garman*, 435 Pa.Super. 590, 646 A.2d 1251, 1253 (1994) (holding that when a stepfather signs an acknowledgement of paternity, knowing he is not the biological father, absent facts that show he has a parent-child relationship with the child, he will not owe a duty of support); *Drawbaugh v. Drawbaugh*, 436 Pa.Super. 57, 647 A.2d 240, 242–43 (1994) (finding a stepparent owes no duty of support where a stepparent seeks minimal visitation of a child)).

The trial court acknowledged that in *Hamilton v. Hamilton*, 795 A.2d 403 (Pa.Super.2002), the Superior Court found a support obligation for a stepfather who signed an acknowledgment of paternity despite knowing he was not the biological father and held himself out as a child's father. The trial court stated that the stepfather in *Hamilton* "prevented the mother from taking action [in support] against the biological father...." Tr. Ct. Op. at 6.[6] The trial court reasoned that

---

ing, but not limited to, medical, religious and educational decisions." 23 Pa.C.S. § 5322(a). Shared physical custody is defined as "[t]he right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child." *Id.*

**5.** As acknowledged by both parties in their briefs, Stepfather has since consensually obtained sole physical custody of the children. Subsequently, Stepfather filed a complaint for child support against Mother. In that support action, Stepfather asserted that his income should not be considered in the support calculation because as a stepparent he owes no duty of support.

**6.** This statement was erroneous, as *Hamilton* did not involve a stepfather who interfered with the mother's ability to seek child support from the biological father. We believe the trial court may have confused the facts of *Hamilton* with those of *Miller v. Miller*, 97 N.J. 154, 478 A.2d 351 (1984), which our Superior Court has frequently cited in the cases discussed *infra*. In *Miller*, the New Jersey Supreme Court found that a stepparent may be liable for child support where he destroyed checks sent by the biological father and affirmatively took on the duty of support-

unlike *Hamilton*, in the instant case, Stepfather never held himself out as the biological father; did not prevent Mother from enforcing the Serbian child support order against the biological father; and did not sign an acknowledgment of paternity. Tr. Ct. Op. at 6–7. For those reasons, the trial court found *Hamilton* inapposite. The trial court concluded that the facts in this case did not warrant a finding that Stepfather owed the children a duty of support on the basis of law or equity.

Mother appealed the trial court's decision to the Superior Court, raising the following issues: 1) whether Stepfather, under the circumstances presented, owes a duty of support to the children, and 2) if a duty of support exists, whether the amount owed should be calculated by the statutorily-imposed child support guidelines. In an unpublished memorandum, a panel of the Superior Court affirmed the trial court's determination that Stepfather did not owe a duty of support to the children because "he has not held himself out as their father or agreed to support the children financially." *A.S. v. I.S.*, 1563 EDA 2013, 2014 WL 10920034, *5 (Pa.Super. filed May 28, 2014). The Superior Court further noted that Mother has chosen not to pursue her legal right to support against the children's biological father in Serbia. As the Superior Court found that no duty of support existed, it did not address Mother's second issue.

Mother sought this Court's discretionary review, and we granted her petition for allowance of appeal to address two issues:

(1) Whether, under Pennsylvania law, a former stepparent who has pursued and established equal parental rights as the children's natural parent—and per a court order, equally shares physical and legal custody with the natural parent—ing the children while married to their moth-

should be relieved of the duty to contribute to the children's support.

(2) If this Court finds that [a] duty of support lies with both parties who share physical and legal custody of the children, whether the amount of support owed is calculated by the statutorily imposed child support guidelines.

*A.S. v. I.S.*, —— Pa. ——, 108 A.3d 1280, 1281 (2015).

Mother asserts that because Stepfather initiated aggressive custody litigation based on *in loco parentis* standing, he should be liable for support, especially where he achieved and is exercising custodial rights equal to those of a biological parent, and, consistent therewith, has prevented Mother from relocating with her children. Mother argues that through his child custody litigation, Stepfather voluntarily assumed the status of *de facto* parent, which should carry the same obligations as any other parent. Mother advocates for a narrow holding that "only refers to a stepparent who has sought and obtained in a court of law *equal parental rights* on par with a fit natural parent." Mother's Reply Brief at 5 (emphasis original).

Acknowledging that there are no published Pennsylvania cases that analyze this issue in accord with facts similar to those presented herein, Mother analogizes her case to *L.S.K. v. H.A.N.*, 813 A.2d 872 (Pa.Super.2002). In *L.S.K.*, the Superior Court determined that a woman was liable for child support for five children born to her former same-sex partner using a sperm donor where the parties agreed to start a family together and both women acted as the children's parents.

Mother distinguishes the cases relied on by the trial court where the Superior Court declined to find a stepparent liable er.

for child support. For instance, Mother points out that in *McNutt*, although the stepparent maintained a relationship with his stepchild, he neither sought nor was awarded any court-ordered custodial rights. *See McNutt*, 496 A.2d at 816–17. Similarly, Mother asserts that in *Garman*, the stepparent signed an acknowledgement of paternity but did not maintain any type of relationship with the child. *See Garman*, 646 A.2d at 1253. Lastly, in *Drawbaugh*, the stepparent sought and obtained minimal visitation with the children, but did not enjoy shared legal and physical custody, and did not seek to prohibit the children's relocation with their mother. *Drawbaugh*, 647 A.2d at 240–41. Thus, Mother argues that Stepfather took far more proactive steps to establish himself as the co-equal parent of these children than the stepparents in each of those cases, and therefore those cases are not controlling here.

In response, Stepfather reiterates the general rule that stepparents do not owe a duty to support their stepchildren, citing *McNutt*, *Garman*, and *Drawbaugh*. Failing to acknowledge that none of the stepparents in the prior cases had obtained shared physical and legal custody nor prevented a parent's relocation, Stepfather declines to view his actions as any different from the stepparents in those cases. As Stepfather sees it, he merely provided love and care for Mother's children, which is insufficient to create a support obligation. Stepfather submits that if we find him liable for support, we will discourage stepparents from engaging in gratuitous relationships with their stepchildren.

Stepfather asserts that Mother's reliance on *L.S.K.* is misplaced because the facts of that case differ significantly from the instant case. Specifically, Stepfather posits that the determinative fact in *L.S.K.* was the joint decision of a same-sex couple to start a family together. Because Stepfather did not participate in Mother's decision to have the children at issue, he believes *L.S.K.* is not applicable.

■ Whether a stepparent may be liable for child support under the circumstances presented is an issue of first impression for this Court. This issue presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary. *Kripp v. Kripp*, 578 Pa. 82, 849 A.2d 1159, 1164 n. 5 (2004).

We begin our inquiry by reviewing the child support statute from which all child support obligations are derived. The statute provides that "[p]arents are liable for the support of their children...." 23 Pa. C.S. § 4321. As both parties concede, the support statute and its corresponding rules do not define "parent" or "child." However, we reject both parties' suggested definition of "parent" for purposes of this case. Mother would like us to adopt the definition found in the Child Protective Services regulations, 55 Pa.Code § 3490.4 (defining "parent" as "[a] biological parent, adoptive parent, or legal guardian"), while Stepfather proposes a competing definition found in the Liability for Tortious Acts of Children chapter within the Domestic Relations Code. 23 Pa.C.S. § 5501 (defining "parent" as "natural or adoptive parents"). Although the subjects of child protective services and tortious acts of children both deal with children, neither chapter is more than tenuously related to child support. Thus, we find these definitions largely irrelevant to the case before us. Moreover, accepting either definition would ignore the definition of a parent for support purposes as it has developed in our case law. Accordingly, we turn to that jurisprudence.

■ We begin by noting that cases within our jurisdiction have deemed a

"parent" for child support purposes as encompassing more than biological or adoptive parents. Rather, courts have looked to whether a nonparent has taken affirmative steps to act as a legal parent so that he or she should be treated as a legal parent. For instance, employing the common-law doctrine of paternity by estoppel, we have found a stepparent could be liable for child support where he has held a child out as his legal child. *Fish v. Behers*, 559 Pa. 523, 741 A.2d 721 (1999). The doctrine of paternity by estoppel provides that where a party assertively holds himself out as a child's father, that party may be estopped from subsequently denying this status. The rationale behind the doctrine is "achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child" because children should be secure in knowing who are their parents. *Id.* at 723.

In *Hamilton, supra,* the Superior Court applied paternity by estoppel to find a stepparent liable for child support where he held the child out as his own and continued his relationship with the child after his separation from the child's mother. 795 A.2d at 407. In *Hamilton*, the stepfather met the mother when the child was three years old. Despite obviously knowing he was not the biological father, the stepfather signed an acknowledgement of paternity and treated the child as his own both during and after the conclusion of his marriage to the mother. After the dissolution of their marriage, the mother sought child support from the stepfather. The Superior Court found that the stepfather was obligated to pay child support because, although it was clear he was not the child's biological father, he held himself out as the biological father and thus was obligated to continue in the role of the child's father so as to not obscure the child's understanding of who his parents

were, in accord with the doctrine of paternity by estoppel.

Recently, in *K.E.M. v. P.C.S.*, 614 Pa. 508, 38 A.3d 798 (2012), this Court reaffirmed the doctrine of paternity by estoppel, recognizing that:

> [C]ourts have been most firm in sustaining prior adjudications (or formal acknowledgments) of paternity based on the need for continuity, financial support, and potential psychological security arising out of an established parent-child relationship.

38 A.3d at 810 n. 12. As with many determinations involving children, we held that the paternity by estoppel doctrine should only be applied where it serves the best interests of the child. *Id.* at 810.

In addition to finding a stepparent liable for child support based on paternity by estoppel, our Superior Court has found a support obligation for an individual who took affirmative steps to act as a parent, under general principles of equity, even where the child would not confuse that individual with a biological parent. *L.S.K.*, 813 A.2d 872. In *L.S.K.*, a woman agreed to create a family with her same-sex partner who became pregnant using artificial insemination and both women acted as mothers to the resulting children. Upon dissolution of the relationship, the non-biological mother obtained custody rights to the children by establishing *in loco parentis* standing but denied that she had a corresponding duty of child support, claiming that only biological parents can owe a duty of support.

The *L.S.K.* court rejected her argument and found that the non-biological mother's forceful steps to act as a parent estopped her from denying that status. The *L.S.K.* court recognized two determinative facts motivating its decision: 1) the biological mother went through a significant under-

taking to have children relying on the non-biological mother's agreement to start a family together; and 2) the non-biological mother had obtained custodial rights to the children based on *in loco parentis* standing. As to the latter fact, the court stated "equity mandates that [the non-biological mother] cannot maintain the status of *in loco parentis* to pursue an action as to the children, alleging she has acquired rights in relation to them, and at the same time deny any obligation for support merely because there was no agreement to do so." *Id.* at 878.

On the other hand, the Superior Court has reviewed several cases in which it determined a stepparent did not take sufficient affirmative steps as a parent to be held liable for support. As noted, the Superior Court has held that the mere existence of a relationship between the stepparent and the child, *i.e., in loco parentis* status, is insufficient to establish a support obligation for the stepparent. *See McNutt,* 496 A.2d at 817. In a similar vein, the Superior Court has found that supporting stepchildren during the marriage was insufficient to obligate a stepfather to pay child support after the marriage dissolved. *See DeNomme,* 544 A.2d at 66. Additionally, signing an acknowledgement of paternity, without more, was insufficient to obligate a stepparent to pay support. *See Garman,* 646 A.2d at 1253. Even establishing *in loco parentis* standing in order to seek minimal visitation with a child was not enough to find that person liable for support. *See Drawbaugh,* 647 A.2d at 242-43. The *Drawbaugh* court noted the public policy behind *McNutt* and its progeny:

> If we were to hold that a stepparent acting *in loco parentis* would be held liable for support even after the dissolution of the marriage then all persons who gratuitously assume parental duties for a time could be held legally responsi-

ble for a child's support.... These acts of generosity should not be discouraged by creating a law which would require anyone who begins such a relationship to continue financial support until the child is eighteen years old.

*Id.* at 242 (quoting *McNutt,* 496 A.2d at 817).

■ Upon consideration of these two lines of cases, we agree and, accordingly, reiterate that *in loco parentis* status alone and/or reasonable acts to maintain a post-separation relationship with stepchildren are insufficient to obligate a stepparent to pay child support for those children.

However, the instant case involves a far greater assumption, indeed, a relentless pursuit, of parental duties than that of a stepparent desiring a continuing relationship with a former spouse's children, as was the case in *McNutt, DeNomme, Garman,* and *Drawbaugh.* Here, we have a stepfather who haled a fit parent into court, repeatedly litigating to achieve the same legal and physical custodial rights as would naturally accrue to any biological parent. This is not the "typical case" of a stepparent who has grown to love his stepchildren and wants to maintain a post-separation relationship with them. Stepfather in the instant case has litigated and obtained full legal and physical custody rights, and has also asserted those parental rights to prevent a competent biological mother from relocating with her children.

■ Stepfather simply does not fall into the category of a stepparent who desires a continuing post-separation relationship with his stepchildren. Rather, he has insisted upon and became a full parent in every sense of that concept. We find that under these facts, Stepfather has taken sufficient affirmative steps legally to obtain parental rights and should share in parental obligations, such as paying child

support. Equity prohibits Stepfather from disavowing his parental status to avoid a support obligation to the children he so vigorously sought to parent.

■ We emphasize that we are not creating a new class of stepparent obligors and our decision today comports with the line of cases that have held that *in loco parentis* standing alone is insufficient to hold a stepparent liable for support. The public policy behind encouraging stepparents to love and care for their stepchildren remains just as relevant and important today as it was when *Drawbaugh* was decided. However, when a stepparent does substantially more than offer gratuitous love and care for his stepchildren, when he instigates litigation to achieve all the rights of parenthood at the cost of interfering with the rights of a fit parent, then the same public policy attendant to the doctrine of paternity by estoppel is implicated: that it is in the best interests of children to have stability and continuity in their parent-child relationships. By holding a person such as Stepfather liable for child support, we increase the likelihood that only individuals who are truly dedicated and intend to be a stable fixture in a child's life will take the steps to litigate and obtain rights equal to those of the child's parent.

■ Having concluded Stepfather is obligated to provide child support under the facts herein, we turn to the second issue we granted on appeal, namely, whether the amount of support owed should be calculated pursuant to the child support guidelines. Stepfather provides no persuasive reason why the support guidelines should not be applied to calculate his support

obligation. In fact, Stepfather concedes that the guidelines apply "to cases where there is a duty to provide support...." Stepfather's Brief at 19. Accordingly, similar to the Superior Court's approach in *L.S.K.*, we find that where a stepparent owes a duty of support based on obtaining equal legal and physical custodial rights to those of a biological parent, then the typical support procedure should follow, including application of the guidelines found in the Rules of Civil Procedure. *See* Pa. Rules Civ. Pro.1910.16–1; *L.S.K.*, 813 A.2d at 879 (finding the support guidelines apply when calculating a non-biological parent's equitable support obligation).

Based on the foregoing, the order of the Superior Court is reversed and the case is remanded to the trial court for a calculation of child support that is based on both Mother's and Stepfather's income.[7]

Jurisdiction is relinquished.

Justice EAKIN did not participate in the decision of this case.

Justices TODD and STEVENS join the opinion.

Chief Justice SAYLOR files a dissenting opinion.

Chief Justice SAYLOR, dissenting.

As the majority initially recognizes, under existing law, the legal obligation of support should turn upon whether Appellee can be deemed to be a "parent" of A.S.'s children. *See* Majority Opinion, at 768–69 (citing 23 Pa.C.S. § 4321). Biological paternity obviously is a primary means of establishing legal parentage, *accord* 23

---

7. We note that finding Stepfather has a duty to support the children does not necessarily mean that he will actually owe Mother a financial contribution. As set forth in the support statute and rules, the support calculation will take into account both parties' in-

comes, as well as who has been the primary custodian during the relevant periods and the amount of parenting time the partial custodial parent has spent with the children. *See* 23 Pa.C.S. §§ 4301–4396; Pa.R.Civ.P. Nos. 1910.1–1910.50.

Pa.C.S. § 4343 (providing for genetic testing as a means to establish paternity); adoption is another avenue. *See In re Davies' Adoption*, 353 Pa. 579, 590, 46 A.2d 252, 257 (1946). Beyond that, the common law has recognized a presumption of paternity and the doctrines of paternity by estoppel, *see generally K.E.M. v. P.C.S.*, 614 Pa. 508, 523–30, 38 A.3d 798, 806–11 (2012), neither of which appears to be the basis for the majority's decision or an appropriate ground for establishing legal parenthood under the facts of the present case.

Instead, the majority seems to apply a looser equitable construct. *See* Majority Opinion, at 770–71 ("Equity prohibits Stepfather from disavowing his parental status to avoid a support obligation to the children he has so vigorously sought to parent."). In this regard, the majority premises Appellee's status as a parent on his "instigat[ing] litigation to achieve all the rights of parenthood at the cost of interfering with the rights of a fit parent." *Id.* at 771.

I differ with the majority's approach for several reasons. First, I note that Appellant's complaint for child support was dismissed at the pleadings stage. Thus, there is no developed evidentiary record available to support a full and balanced inquiry into the overarching equities involved. *Cf. K.E.M.*, 614 Pa. at 529, 38 A.3d at 810 (limiting the application of paternity by estoppel to instances in which "it can be shown, *on a developed record*, that it is in the best interests of the involved child" (emphasis added)).

I also observe that, in order to succeed in securing custody rights, Appellee was required to demonstrate clear and convincing reasons to overcome the strong presumption that custody should have been awarded to Appellant. *See* 23 Pa.C.S. § 5327(b). Furthermore, at least per the

view of the family court, Appellant has engaged in a course of "contemptuous" conduct relative to her treatment of the parties' prior custody agreement. *See A.S. v. I.S.*, No. 2010–0038, *slip op.* at 4 (C.P. Montgomery July 8, 2013). At the very least, to the degree that this case should turn on equitable factors, it would seem to me that there is a fuller range of these considerations to be evaluated by a fact-finder.

More broadly, I am uncomfortable with the majority's fashioning of a new doctrine of parentage. The Legislature has seen fit to accord standing to pursue custody to those *in loco parentis* to children in furtherance of the children's best interests. *See* 23 Pa.C.S. § 5324(2). The Assembly has not, however, concomitantly adjusted the law of support. As there are mixed policy considerations involved, *see, e.g.*, Leslie Joan Harris, *The Basis for Legal Parentage and the Clash Between Custody and Child Support*, 42 IND. L. REV. 611 (2009), I believe it is the Legislature's purview to consider whether such adjustments should be implemented.

As an aside, I note that in some jurisdictions, while an individual who voluntarily accepts custody of a stepchild may be held liable for support, such a person has the option of surrendering custody to alleviate the support obligation. *See, e.g., Foust v. Montez–Torres*, 2015 Ark. 66, 456 S.W.3d 736, 738 (Ark.2015). It is unclear whether, under the majority opinion, Appellee is to be accorded such option.[1]

Finally, in terms of Appellant's constitutional arguments, it is significant to me that she is not challenging the shared custody award in the abstract, but rather its import in terms of the dismissal of her support complaint. *See* Brief for Appel-

---

1. Certainly, read against the family court's existing best-interests determination, the effect of an exercise of such an option upon the children involved would be detrimental.

lant at 31–33. The award of equal, shared, physical and legal custody to a non-parent (as opposed to visitation) over and against a fit parents wishes does, in my mind, raise serious constitutional concerns. Assuming that such award is permissible in the first instance, however, I do not find the Legislature's failure to provide for a corresponding obligation of support to be disabling.