J-S36014-19

2019 PA Super 355

| | | | |
|---|---|---|---|
| S.R.G. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| D.D.G. | : | No. 313 MDA 2019 | |

Appeal from the Order Entered January 16, 2019
In the Court of Common Pleas of Dauphin County
Domestic Relations at No(s):  0267 DR 2018

BEFORE:   PANELLA, P.J., SHOGAN, J., and PELLEGRINI, J.[*]

OPINION BY PANELLA, P.J.:               **FILED DECEMBER 10, 2019**

The trial court denied S.R.G.'s ("Grandmother") petition seeking child support payments from D.D.G. ("Grandfather") for their daughter's child. Grandmother argues the trial court erred in denying her petition as Grandfather has an extensive history of relentlessly litigating his claims for custody of the child. While the trial court found that Grandmother made a compelling argument, it ultimately concluded that the parties did not aggressively assert their custody claims against child's parents; rather, the court concluded that the parties "stepped into the parental void" caused by child's parents. After careful review, we can find no error of law in the trial court's conclusions, and therefore affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

Prior to their pending divorce, the parties were granted legal and primary physical custody of the child through an agreed custody order. The parties' daughter, the child's mother, has a history of mental illness and the parties agree that she is not capable of raising the child. The parties also agree that the child's father has never been involved in child's life, and is currently serving a lengthy prison sentence. However, neither of the child's parents' parental rights have ever been terminated or relinquished.[1]

After Grandfather filed for divorce from Grandmother, and Grandmother relocated to Florida, the parties agreed to numerous modifications to their custody agreement. Ultimately, the agreement provided for a split schedule of primary physical custody whereby Grandfather exercises partial physical custody of child during summers, spring break, and a two-week period during the fall. Grandmother exercises primary physical custody at all other times. Grandmother had sole legal custody of the child, however grandparents later entered an agreed order providing they would share legal custody, with Grandfather having sole decision-making authority on health and education issues (though not religion) during his period of physical custody only.

---

[1] Child's mother and father have been granted visitation rights, as agreed to by grandparents, in the custody agreements. It does not appear that father has ever exercised this right. Mother has spent brief periods of time living with grandparents and the child, and subsequently Grandfather and child, intermittently over the years.

As noted, Grandmother subsequently sought child support payments from Grandfather. Whether a third party[2] may be held liable for child support to another third party is a question of law, which we review *de novo*. **See A.S. v. I.S.**, 130 A.3d 763, 768 (Pa. 2015).

Pennsylvania law is clear that parents of a child have a duty to support that child. **See** 23 Pa.C.S.A. § 4321(2). On the other hand, there is no explicit statutory requirement that a grandparent has any duty to support a grandchild. **See id**.

Grandmother claims Grandfather has a legal duty to pay child support to her for their grandchild since grandparents stand *in loco parentis* to the child. Grandmother asserts grandparents have taken proactive steps to establish themselves as the legal parents of the child and that mother and father have never, and never will, assume parental duties.

Initially, we have previously held that *in loco parentis* status alone is insufficient to create a support obligation for a nonparent. **See Commonwealth ex rel. McNutt v. McNutt**, 496 A.2d 816, 817 (Pa. Super. 1985).

> If we were to hold that a stepparent acting in loco parentis would be held liable for support even after the dissolution of the marriage then all persons who gratuitously assume parental duties for a time could be held legally responsible for a child's support. It is not uncommon for a grandparent, an aunt or uncle or an older

---

[2] "Persons other than natural or biological parents are deemed to be 'third parties' for purposes of custody disputes." **Cardamone v. Elshoff**, 659 A.2d 575, 579-80 (Pa. Super. 1995) (citations omitted).

sibling to assume responsibilities for parenting when the natural parents are absent. These acts of generosity should not be discouraged by creating a law which would require anyone who begins such a relationship to continue financial support until the child is eighteen years old.

*Id.*

Acknowledging this precedent, Grandmother cites to the Pennsylvania Supreme Court decision in *A.S.*, for the proposition that a duty of child support can arise where a nonparent has taken "affirmative steps to act as a legal parent so that he or she must be treated as a legal parent." *See* Appellant's Brief, at 12.

In *A.S.*, the child's stepfather "haled a fit [biological mother] into court, repeatedly litigating to achieve the same legal and physical custodial rights as would naturally accrue to any biological parent." *Id.*, at 770. The court described the case as not a typical one "of a stepparent who has grown to love his stepchildren and wants to maintain a post-separation relationship with them." *Id.* Instead, the stepfather "ha[d] litigated and obtained full legal and physical custody rights, and ha[d] also asserted those parental rights to prevent a competent biological mother from relocating with her children." *Id.*

Our Supreme Court held that, because the stepfather had "taken sufficient affirmative steps legally to obtain parental rights," he "should share in parental obligations, such as paying child support." *Id.*, at 770-71. Our Supreme Court added, "[e]quity prohibits [the] [s]tepfather from disavowing

his parental status to avoid a support obligation to the children he so vigorously sought to parent." ***Id.***, at 771.

Here, the trial court distinguished ***A.S.*** from the circumstances in this case. The court found that there was no evidence that the parties had ever taken any affirmative steps to be parents of the child; rather, it found the record could not support a finding that the child thinks of the parties as anything other than his grandparents.

Further, the court found that the parties' claims for custody have not been aggressive or hostile to the rights of the child's parents:

> Both grandparents initially became full time *de facto* custodians of [the child] shortly after his birth due to the parents' inability to fulfill their parental roles. Grandparents continued to act as [the child's] *de facto* custodians for the next nineteen months before they formally initiated a custody action. Though the record supplied by the parties does not directly address why grandparents sought formal custody rights when they did, such would have become necessary at some point in order for them to legally act on [the child's] behalf (for instance, to obtain medical care for him and enroll in him in school). What is clear, however, is that grandparents never sought court-ordered custody in an effort to assert custodial rights as against either or both parents. They never affirmatively, assertively, aggressively or otherwise sought out a parental role. Instead, they gratuitously and generously filled the parental void. This is a fundamental distinction between this situation and that in ***A.S.*** The Supreme Court in ***A.S.*** went out of its way to stress the somewhat litigiously aggressive posture by stepfather in "relentless pursuit" of full parental rights "at the cost of interfering with the rights of a fit parent." The grandparents in this case are fundamentally acting as grandparents, not as parents, and have never sought to usurp the parental rights of mother and father.

Trial Court Opinion, 2/15/19, at 9-10.

We agree with the trial court that the circumstances of this case present a close call. On the one hand, as the trial court notes, neither party has sought to usurp the parental rights of the child's mother and father. On the other hand, Grandfather has sought, and been awarded, periods of physical and partial legal custody of the child.

Despite this, we also agree with the trial court that the circumstances presented by this case are readily distinguishable from **A.S.** The third party stepfather in **A.S.** did not fall into the category of a third party who merely desired a continuing post-separation relationship with his stepchildren. **See A.S.**, 130 A.3d 763, 770. Rather, the Court observed that the stepfather had "insisted upon and became a full parent in every sense of that concept," and had done so at the expense of a fit natural parent. **Id.**

Here, Grandfather has not insisted upon or become a full parent to the child, but rather gratuitously assumed the burdens of custody. Furthermore, the record supports the trial court's determination that Grandfather is merely a grandparent who desires to maintain a relationship with his grandchild. Finally, Grandfather has not asserted custody rights against a fit biological parent, but rather another third party. There is simply no statutory authorization presently in Pennsylvania extending the duty of child support between two third parties, where neither party has adopted the child, and the

natural parents have not had their parental rights terminated.[3] Under these circumstances, we cannot conclude the trial court erred in denying Grandmother's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/2019

---

[3] Such a question is matter for the legislature, not the courts, to decide.