J-A17001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH S. CALDWELL, JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIP JAURIGUE | : | No. 140 EDA 2022 |

Appeal from the Order Entered December 3, 2021
In the Court of Common Pleas of Bucks County
Domestic Relations at No(s): 2021DR00484,
PACSES: 207300887

BEFORE:   PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED OCTOBER 5, 2022**

Joseph S. Caldwell, Jr. ("Father") appeals the Bucks County Court of Common Pleas' order granting Philip P. Jaurigue's preliminary objections to Father's complaint seeking child support for ten-year-old L.C. ("Child") and dismissing Father's complaint. Jaurigue, who has been found to stand *in loco parentis* to Child, sought and obtained partial custody of Child from Father after Jacqui Spencer, Jaurigue's paramour and also Child's mother ("Mother"), died. Father, in turn, filed for child support payments from Jaurigue. The trial court concluded that Jaurigue was not obligated to provide any such payments. We reach the contrary conclusion, instead finding that Jaurigue has proactively sought and assumed a level of legally-protected parental rights so

_____

[*] Retired Senior Judge assigned to the Superior Court.

as to invoke an obligation to support Child under our Supreme Court's decision in **A.S. v. I.S.**, 130 A.3d 763 (Pa. 2015). We therefore reverse and remand for proceedings consistent with this memorandum.

The facts leading to this appeal are not in dispute. Father and Mother never married but were the biological parents of Child. While Mother was pregnant with Child, she began a relationship with Jaurigue. Mother and Child began residing with Jaurigue in 2013, when Child was approximately 16 months old. Mother had primary physical custody of Child, so Child primarily lived with Mother and Jaurigue. Father had partial physical custody. This arrangement continued until Mother died in December 2019, at which time Child went to live with Father. Child visited with Jaurigue only when Father permitted.

Jaurigue filed a complaint for custody of Child in June 2020, claiming he stood *in loco parentis* to Child and seeking partial physical custody of her. Father filed preliminary objections challenging Jaurigue's standing to seek custody. After holding a hearing on the standing issue, the trial court overruled Father's objections and concluded that Jaurigue had *in loco parentis* standing to pursue the custody of Child.

The trial court then held two hearings to determine the custody of Child. On March 22, 2022, the trial court issued a custody order awarding Father sole legal and primary physical custody, but also awarding Jaurigue partial physical custody. Jaurigue's partial custody schedule included: one weekend

every other month, Saturdays during the day on the fourth weekend of every month, Saturdays during the day on the second weekend of every other month, every Thursday[1] after school, Saturdays during the day before certain identified holidays, one day during Child's winter break, New Year's Day, and one week of summer vacation each calendar year, which may include domestic air travel.

In addition to setting the partial physical custody schedule, the custody order also provided that Jaurigue was allowed daily private FaceTime/phone calls with Child on his non-custodial days, as well as daily texts. The order further provided that Jaurigue:

> shall be notified and permitted to participate in and attend school events/activities and extracurricular activities including, but not limited to, fundraisers, school plays, concerts, shows, exhibits, volunteer events, gymnastics, dance, soccer, camp events and religious activities and observances. If such events and activities are only open to family members, Father shall list [Jaurigue] as a family member so that he may attend and also access any online information to facilitate same.

Custody Order, 3/22/2021, at 3 (unpaginated).

The custody order also established that Jaurigue is entitled to participate in all current and future counseling, therapy and tutoring that Child is involved in, with Father directed to sign any provider releases necessary to permit that

---

[1] Although Jaurigue was originally granted Mondays after school, the record reflects that the order was modified to change the day to Thursdays. **See** Exhibit A to Defendant's Preliminary Objections to Plaintiff's Complaint in Child Support, 6/23/21, at 2 (unpaginated); N.T., 3/22/22, at 14.

participation. Further, the custody order provided that Father and Jaurigue were to make a concerted effort to "foster feelings of security, respect, and love in [Child] regarding the other party," and were not to make any derogatory remarks about each other in Child's presence. *Id.* at 4 (unpaginated). The final paragraph of the custody order established that Father and Jaurigue were required to comply with the notice obligations under 23 Pa.C.S.A. § 5337 in the event of a qualifying change in their residence.

Father appealed, challenging the trial court's decision regarding Jaurigue's standing. This Court affirmed the court's determination that Jaurigue stood *in loco parentis* to Child, albeit on the basis that Father had waived his claims by filing a brief which failed on multiple fronts to comply with the Rules of Appellate Procedure. *See Jaurigue v. Caldwell*, 268 A.3d 423, 796 EDA 2021 (Pa. Super. filed November 15, 2021) (unpublished memorandum).

While that appeal was pending, Father also filed a complaint in child support, seeking support payments for Child from Jaurigue. Jaurigue responded by filing preliminary objections. The trial court did not hold a hearing on the preliminary objections. Instead, on December 3, 2021, the trial court entered an order granting Jaurigue's preliminary objections and dismissing the support complaint.

Father timely appealed this order, and complied with the trial court's directive to file a Pa.R.A.P. 1925(b) statement of matters complained of on

appeal. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion explaining that it had not erred by dismissing Father's support complaint because, according to the trial court, Jaurigue had no obligation to support Child. Citing our Supreme Court's decision in *A.S.*, the trial court noted that the mere fact that a stepparent stood *in loco parentis* to a child, or made efforts to maintain a post-separation relationship with the child to whom they stood *in loco parentis*, was not sufficient to impose an obligation to pay support. *See A.S.*, 130 A.3d at 770. Applying those principles to the instant case, the court continued:

> It is clear to the Court that [ ] Jaurigue previously assumed a parental status over [Child] and filed a Complaint in Custody to seek visitation rights in order to maintain a relationship with [Child] after the death of Mother. [Under] appellate case law in Pennsylvania, [ ] Jaurigue's 'past and continued love and devotion' to [Child] does not carry with it a duty to financially support [Child]. [*See*] *Commonwealth ex. rel. McNutt v. McNutt*, [496 A.2d 816, 817 (Pa. Super. 1985) (stating that a stepparent's past and continued devotion to his former stepchild alone does not invoke a duty of support)].

Trial Court Opinion, 1/25/22, at 4.

The trial court also quoted the following excerpt from *McNutt*, explaining the policy considerations behind the general rule that no legal duty rests on a former stepparent to support a former stepchild, even when the stepparent acts *in loco parentis* both before and after the relationship ends with the stepchild's parent:

> If we were to hold that a stepparent acting *in loco parentis* would be held liable for support even after the dissolution of the marriage then all persons who gratuitously assume parental duties for a

> time could be held legally responsible for a child's support. …
> These acts of generosity should not be discouraged by creating a
> law which would require anyone who begins such a relationship to
> continue financial support until the child is eighteen years old.

***McNutt***, 496 A.2d at 817.

Based on these considerations, and after noting that Jaurigue had only requested partial physical and not legal custody of Child, the trial court concluded Jaurigue was not liable to support Child. The court therefore urged this Court to affirm its order dismissing Father's support complaint against Jaurigue.

In advocating for the opposite result, Father raises four questions in his appeal to this Court. However, whittled down, Father's four questions essentially challenge: 1) the trial court's dismissal of Father's support complaint on the basis of its conclusion that Jaurigue was not obligated to pay child support; and 2) the trial court's failure to first hold a hearing before dismissing the complaint.[2] As we agree with Father that Jaurigue is liable to pay support and the trial court therefore erred by dismissing his support complaint, we need not reach Father's second issue.

The Domestic Relations Act is clear that parents of a child have a duty to financially support that child. ***See*** 23 Pa.C.S.A. § 4321(2). Although the

---

[2] In fact, Father divides his four questions into just two arguments in the argument section in his brief.

statute does not explicitly address the duty of a third party to provide such support, Pennsylvania courts have extended the duty to third parties in certain circumstances.[3] Whether a third party, such as a stepparent, is liable for child support is a question of law, which means our standard of review is *de novo* and our scope of review is plenary. *See A.S.*, 130 A.3d at 768.

Here, we recognize that Jaurigue and Mother did not marry, so Jaurigue was never technically a stepparent to Child. However, Jaurigue acknowledges he is akin to a stepparent. *See* Appellee's Brief at 9. There is also no dispute that Jaurigue has legally been found to stand *in loco parentis* to Child.

"The term *in loco parentis* literally means 'in the place of a parent.'" *Peters v. Costello*, 891 A.2d 705, 710 (Pa. 2005) (citation omitted). However, as the trial court correctly observed, *in loco parentis* status alone does not make a stepparent liable to financially support his stepchildren. *See A.S.*, 130 A.3d at 766, 770. *A.S.* also specifically reiterated that a former stepparent's "reasonable acts to maintain a post-separation relationship with stepchildren are insufficient to obligate a stepparent to pay child support for those children." *Id.* at 770. So, for example, the former stepparent in *McNutt* was not liable for support when he "maintained a relationship with his stepchild, [but] neither sought nor was awarded any court-ordered custodial

---

[3] For purposes of custody and support matters, persons other than the natural or biological parents of a child are deemed to be third parties. *See S.R.G. v. D.D.G.*, 224 A.3d 368, 370 n. 2 (Pa. Super. 2019).

- 7 -

rights." **A.S.**, 130 A.3d at 768 (citation omitted). Likewise, the former stepparent in **Drawbaugh v. Drawbaugh**, 647 A.2d 240 (Pa. Super. 1994), was also not obligated to financially support his former stepchildren even though he had filed a petition for minimal visitation with them. **See A.S.**, 130 A.3d at 770.

Critically, however, **A.S.** went on to recognize that there are some situations, such as the one in **A.S.**, where a former stepparent affirmatively takes sufficient legal steps to act as a parent so as to trigger an obligation to pay support. There, a former stepfather to twins filed a complaint in custody for the twins after he and the twins' mother separated and the mother planned to relocate with the twins. The trial court found that the stepfather stood *in loco parentis* to the twins and eventually granted him shared physical and legal custody of the twins. The court also prohibited either party from relocating with the twins without permission from the other party and the court.

The twins' mother filed a support complaint against the stepfather, but the trial court dismissed the complaint. This Court affirmed, agreeing with the trial court that the former stepfather had no duty to provide financial support to the twins.

Our Supreme Court reversed. While the **A.S.** Court acknowledged the general rule that a former stepparent's efforts to maintain a relationship with

their former stepchildren did not make the stepparent liable to support them, the Court stated:

> [T]he instant case involves a far greater assumption, indeed a relentless pursuit, of parental duties than that of a stepparent desiring a continuing relationship with a former spouse's children… Here, we have a stepfather who haled a fit parent into court, repeatedly litigating to achieve the same legal and physical custodial rights as would naturally accrue to any biological parent. This is not the 'typical case' of a stepparent who has grown to love his stepchildren and wants to maintain a post-separation relationship with them.

*Id.* at 770.

Accordingly, the *A.S.* Court found that the stepfather owed a duty to support the twins because of the proactive legal steps he had taken to act as their parent. In doing so, the Court announced the general holding that "when a stepparent takes affirmative legal steps to assume the same parental rights as a biological parent, the stepparent likewise assumes parental obligations, such as the payment of child support." *Id.* at 765.

Here, Father argues the efforts Jaurigue made to assume parental duties for Child were sufficient to invoke an obligation to support Child under *A.S.* Jaurigue counters that *A.S.* is easily distinguishable from his case. To that end, Jaurigue emphasizes that, unlike the stepfather in *A.S.*, he never sought legal custody or anything beyond partial physical custody of Child and did not "relentlessly pursue" any custody matter against Father. Instead, according to Jaurigue, he merely filed for custody of Child so he could continue a

relationship with a child he had bonded with during the many years he had lived with her.

While we acknowledge the facts and circumstances here are less clear cut than those in *A.S.*, Jaurigue's argument does not account for the range and extent of custodial rights he sought and obtained after taking the initiative to file a custody complaint against Father. The amount of time allotted to Jaurigue by the physical custody schedule is extensive. According to Father, Jaurigue's custodial time amounts to a total of 106 days, or 29%, of the year. *See* Appellant's Brief at 10. Jaurigue contends Father's assertions of his custodial time are grossly overstated, and in reality, his custodial time only amounts to 10% of the year. *See* Appellee's Brief at 10. He also maintains that the only time measurement that is relevant for support purposes is the number of overnights he has with Child, of which he only has 19 per year. *See id.* at 9-10.

Regardless of the exact amount of custodial time that Jaurigue has been awarded, it is clear that the custody schedule allows Jaurigue to have regular, consistent, and significant amounts of custody time with Child. That time includes not only weekly after-school and dinner time, but regular Saturday visits and overnight stays, as well as vacation time that allows for air travel. It is time that could hardly be classified as minimal visitation, *compare Drawbaugh*, 647 A.2d at 240, 243, and time which Father may not deny

Jaurigue, as it is legally mandated by the custody order Jaurigue actively pursued.

The custody order, however, does more than award substantial physical custody time to Jaurigue. It also allows him to spend time with Child beyond his physical custody days. Jaurigue is allowed daily Facetime/phone calls on his non-custodial days, along with daily texts. Father must notify Jaurigue of, and allow him to participate in, a long but not exhaustive list of Child's school and extracurricular activities. Notably, Father must name Jaurigue as a family member if that status is required for attendance or access to online information regarding those activities. He must also inform Jaurigue of, and allow him to participate in, any therapy or tutoring sessions in which Child engages. And should Father wish to relocate with Child, he must notify Jaurigue and give him the opportunity to object to, and potentially prevent, that relocation pursuant to 23 Pa.C.S.A. § 5337(c) and (d).

Based on these terms, we agree with Father that Jaurigue's actions represent a proactive pursuit to assume parental duties of Child that would otherwise belong to Father. There can be no question that Jaurigue has significantly intruded upon Father's full custody rights to Child. The amount of custodial time, along with the level of involvement in Child's activities and life, goes well beyond the 'typical case' of a stepparent who wishes to maintain a relationship with a stepchild he has grown to love, which, under our case law, is insufficient to attach an obligation to support the stepchild. *See McNutt*,

496 A.2d at 817, 818. Instead, we have a situation, such as the one in **A.S.**, where a stepparent has taken "affirmative legal steps to assume the same parental rights as a biological parent." **A.S.**, 130 A.3d at 765.

We emphasize that the circumstances here are different from those in **A.S.** But that will always be the case in the fact-intensive world of custody and support matters. **See E.A.L. v. L.J.W.**, 662 A.2d 1109, 1118 (Pa. Super. 1995) (stating that custody decisions are necessarily based on the individual and particular facts of each case). In our view, the extent of custodial and legal rights, as well as the level of court-protected involvement in Child's life granted to Jaurigue, all of which was the fruit of the custody complaint filed by Jaurigue, brings this case under the umbrella of the general rule of **A.S.**

Jaurigue argues that his situation is more akin to **S.R.G.**, where this Court found there was no support obligation. **See S.R.G.**, 224 A.3d at 372. There, the grandparents of the child entered into an agreed custody order with their daughter which granted the grandparents legal and primary physical custody of the grandchild. The parents' rights were never terminated and the grandparents never adopted the child. The grandparents later divorced, after which the grandfather and the grandmother agreed that the grandfather would have partial physical custody of the child, the grandmother would have primary physical custody, and the two would share legal custody.

The grandmother filed a petition for child support from the grandfather, which the trial court denied. This Court affirmed, although only after

describing the decision as a "close call." ***Id.*** at 371. In distinguishing the case from ***A.S.***, ***S.R.G.*** noted that, unlike the stepfather in ***A.S.***, the grandfather had only gratuitously assumed the burdens of custody when both parents were unable to do so and, in the end, was merely a grandparent wishing to maintain a relationship with his grandchild. ***See id.*** at 372. Importantly, ***S.R.G.*** was careful to emphasize that the grandfather had not sought court-ordered custody rights against a fit biological parent but rather, against another third party. ***See id. S.R.G.*** noted there was no statutory authority extending the duty of child support between two third parties in the circumstances of that case. ***See id.***

We do not agree with Jaurigue that ***S.R.G.*** controls this case, as the two cases are entirely different. Here, Jaurigue did not gratuitously accept the burdens of custody but instead filed a complaint seeking custody of Child. And he did so against a fit biological parent. This support dispute does not involve grandparents, or even two third parties. Instead, it involves a person akin to a stepparent proactively filing a custody complaint with the intent to usurp the parental rights of Child's biological father.

This is not to say that Jaurigue's actions were not done out of love and concern for Child. The record reflects otherwise. However, the record also shows that Jaurigue's actions amounted to more than a stepparent seeking to maintain a relationship with a stepchild he has grown to love. They were affirmative actions intended to legally gain substantial parental rights to Child.

Moreover, holding Jaurigue liable to support Child in light of the affirmative actions he took to assume parental duties for Child does not dismantle the policy considerations articulated in **McNutt** but rather, advances those set forth in **A.S.** As explained by **A.S.**:

> We emphasize that we are not creating a new class of stepparent obligors and our decision today comports with the line of cases that have held that *in loco parentis* standing alone is insufficient to hold a stepparent liable for support. The public policy behind encouraging stepparents to love and care for their stepchildren remains just as relevant and important today as it was when **Drawbaugh** [quoting **McNutt**] was decided. However, when a stepparent does substantially more than offer gratuitous love and care for his stepchildren, when he instigates litigation to achieve all the rights of parenthood at the cost of interfering with the rights of a fit parent, then the same public policy attendant to the doctrine of paternity by estoppel is implicated: that it is in the best interests of children to have stability and continuity in their parent-child relationships. By holding a person such as [the] [s]tepfather [in **A.S.**] liable for child support, we increase the likelihood that only individuals who are truly dedicated and intend to be a stable fixture in a child's life will take the steps to litigate and obtain rights equal to those of the child's parent.

**A.S.**, 130 A.3d at 771.

Jaurigue's actions show he is dedicated to continuing to be a stable fixture in Child's life. He filed for custody and obtained substantial parental rights to Child in order to ensure he is able to be that stable fixture for Child and to be intricately involved in her life. Under **A.S.**, and for all the reasons explained above, we find that Jaurigue is obligated to financially support Child. The trial court erred by finding that he was not and, in turn, erred by dismissing Father's support complaint against Jaurigue.

Order reversed. Matter remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/05/2022