**[J-72-2023] [MO: Dougherty, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| JOSEPH S. CALDWELL, JR., | : | No. 30 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 140 EDA 2022 |
| | : | dated October 5, 2022, Reversing |
| v. | : | the Order at No. 2021DR00484 |
| | : | dated December 3, 2021 of the |
| | : | Bucks County Court of Common |
| PHILIP P. JAURIGUE, | : | Pleas, Domestic Relations Division, |
| | : | and Remanding. |
| Appellant | : | |
| | : | ARGUED:  November 30, 2023 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                    **DECIDED:  May 31, 2024**

I join the Majority in full.

I write separately to emphasize the clarifying effect that today's decision will have on *A.S. v. I.S.*, 130 A.3d 763 (Pa. 2015), and on child support law in Pennsylvania.

In *A.S.*, by a three to one vote,[1] this Court reinstated a complaint for child support against a stepfather who had engaged in what the Majority there labeled "a relentless pursuit" of custody.[2] Eventually, the stepfather had obtained an order granting him shared legal and physical custody and prohibiting the mother from relocating with the children. In striving to resolve that atypical case, the *A.S.* Court unwittingly blurred the line

---

[1]     Then-Justice Baer authored the majority opinion, which was joined by then-Justices Todd and Stevens.  Then-Chief Justice Saylor authored a dissenting opinion. Then-Justice Eakin did not participate.  The other two seats on the Court were vacant.

[2]     *A.S.*, 130 A.3d at 765, 770.

demarcating what is required in order to permit a parent to seek child support from a third party. Today, this Court restores clarity to that enterprise.

Initially, the *A.S.* Court acknowledged that "*in loco parentis* status alone and/or reasonable acts to maintain a post-separation relationship with stepchildren are insufficient to obligate a stepparent to pay child support."[3] The Court protested that it was "not creating a new class of stepparent obligors" and claimed that its decision "comports with the line of cases that have held that *in loco parentis* standing alone is insufficient" for liability for child support.[4]

But then the train jumped the tracks. Invoking "public policy," the *A.S.* Court stressed that stepfather was "repeatedly litigating to achieve the same legal and physical custodial rights as would naturally accrue to any biological parent."[5] The Court emphasized that stepfather sought to become "a full parent in every sense of that concept," and "to achieve all the rights of parenthood," and that he took "sufficient affirmative steps legally to obtain parental rights."[6]

*A.S.*'s focus upon stepfather's litigiousness begged the obvious question, one that has bedeviled Pennsylvania courts since: just how much litigation is enough in order to manufacture a duty in a non-parent to support a child? *A.S.*'s use of terms such as "full parent," "rights of parenthood," and "the same legal and physical custodial rights as would naturally accrue to any biological parent" served further to sow ambiguity, if not outright confusion, as to just how much custody time or prerogative might be enough to trigger a support obligation. The unintended consequence of *A.S.*'s focus on the amount of

---

[3]    *Id.* at 770.

[4]    *Id.* at 771.

[5]    *Id.* at 770.

[6]    *Id.* at 770-71.

litigation and the amount of custody time created a potential for arbitrariness in the decisions that Pennsylvania courts make in child support cases. Because *A.S.* blurred the line, principled decision making became more difficult for family court judges. Different courts could look at similar amounts of litigation or similar amounts of awarded custody time and reach inconsistent conclusions as to whether a third party had sufficiently pursued the rights of a parent so as to incur liability for child support.

Consider today's case. The Superior Court focused on the amount of physical custody time that deceased Mother's paramour, Philip Jaurigue, obtained. This led to arguments between Jaurigue and the child's father (Joseph Caldwell, Jr.) over how to tally custody time: did any hours awarded to Jaurigue count, or only overnights? The Superior Court concluded that Jaurigue had "regular, consistent, and significant amounts of custody time" and also noted that Jaurigue was permitted "to spend time with Child beyond his physical custody days."[7] Because the custody arrangement "significantly intruded upon Father's full custody rights," the Superior Court held that Jaurigue's actions went beyond a stepparent's mere attempt to maintain a relationship with a stepchild.[8]

Today's decision dispels the confusion caused by *A.S.*. Third party liability for child support is confined to those who obtain sole or shared legal custody. Tying the ability "to make major decisions on behalf of the child"[9] to "the rights of parenthood,"[10] today's Majority remedies the fuzzy language of *A.S.* and supplies a straightforward criterion for determining liability of third parties for child support.

---

[7]    *Caldwell v. Jaurigue*, 140 EDA 2022, 2022 WL 5073906 at *4-*5 (Pa. Super. 2022).

[8]    *Id.* at *5.

[9]    Maj. Op. at 24 (quoting 23 Pa.C.S. § 5322).

[10]    *Id.* at 25 (quoting *A.S.*, 130 A.3d at 771).

This bright line rule will ensure consistency. It also will relieve courts from idiosyncratic parsing of how much motion practice is too much or how much custody time is sufficient. Further, it will reduce litigation, as parents will know whether a third party is liable for support once the custody order is entered. Going forward, courts and litigants should focus upon this bright line rule that legal custody provides in third party support cases rather than upon the imprecise language used in *A.S.*